JEFFREY W. ROBINSON, Appellant, v. G.G.C., INC.,
dba ENTERPRISE COMPANY, Respondent.

No. 20836

March 28, 1991                    808 P.2d 522

*Crockett and Myers,* Las Vegas; *James R. Lucas,* Las Vegas,
for Appellant.

*Samuel A. Harding,* Las Vegas; *John Hurley,* Santa Ana,
California, for Respondent.

## OPINION

By the Court, ROSE, J.:

Appellant Jeffrey W. Robinson suffered permanent damage to his hand when he tried to remove an object from a box crushing machine. Robinson was a boxboy at Lucky's Supermarket and was operating the machine when the accident occurred. He sued the manufacturer of the machine, G.G.C., Inc., dba Enterprise Company (Enterprise) on a strict products liability theory based on defective design. The jury returned a verdict for Enterprise and Robinson asserts several errors on appeal.

## FACTS

On July 26, 1985, Robinson was operating a hydraulic crushing machine used to flatten cardboard boxes. As he was filling the machine, he saw something caught in the crushing device, called the ram, and reached in to pull the item out. While yanking on the object, he fell backward and lost his balance. Then he was somehow knocked forward and got his hand caught in the machine. From that position, he could not reach the stop button and had to call for someone else to shut off the machine. His hand was badly damaged.

The machine is called a crusher or a baler, and was designed by Enterprise in about 1969 and manufactured in 1979. It had a protective screen that had been broken and removed four or five months before the accident. In this model, the screen serves as a safety gate and operates in concert with the ram. The screen descends over the opening of the machine ahead of the ram, so that it closes before the ram comes all the way down. If anything falls into the path of the screen, the screen and the ram automatically retract halting the crushing process. However, on top of the machine is a limit switch which controls the safety screen. An operator can fasten the switch in an off position so that the baler will still function without operation of the safety screen. In this case, the switch had been in the off position for at least four or five months.

Robinson asserted at trial that the removable screen was a design defect that was unreasonably dangerous to the consumer. He claimed that the machine was defective because (1) it should not have been functional without the safety screen in place, and (2) the safety screen jutted out making it susceptible to damage or detachment. He proposes that the jury found against him because the court gave a misleading jury instruction and excluded relevant evidence.

The assertions of error are the following: (1) the jury instruction regarding legally sufficient warnings effectively directed a verdict for the defendant; (2) the court should have admitted evidence of (a) prior/subsequent accidents with analogous machines, (b) the design of analogous machines built in or before 1979, (c) post-manufacture pre-accident design changes, and (d) American National Standards Institute (ANSI) standards that had been promulgated for this type of machine in 1982, and for analogous machines in previous years; (3) the court should have permitted Robinson to impeach a defense witness for bias; and (4) the court excluded some deposition testimony of one of Robinson's witnesses. Three of these assertions have merit and entitle Robinson to a new trial.

## LEGAL DISCUSSION

### I. *The misleading jury instruction.*

Enterprise placed warning decals on the machine which warned consumers to keep hands clear of the machine. Enterprise contends that these decals should shield it from liability. In conformance with Enterprise's theory, the court gave a jury instruction which read, "[a] product which bears suitable and adequate warnings concerning the safe manner in which the product is to be used and which is safe to use if the warning is followed is not in a defective condition."

Robinson contends that this instruction effectively directed a verdict for the defendant because it told the jury that warnings shield manufacturers from liability. This court has already held that manufacturers can still be liable for a foreseeable misuse of a product in spite of an adequate warning. Crown Controls Corp. v. Corella, 98 Nev. 35, 639 P.2d 555 (1982). In *Crown,* the plaintiff was injured when a power lift stacker fell on him. This court determined that a manufacturer cannot be liable for an abnormal and unintended use of a product, but may be liable for a foreseeable misuse. *Id.* at 37, 639 P.2d at 557. Therefore, in spite of a warning, the defendant in *Crown* was still liable for a foreseeable misuse.

The question before us now is when, in spite of an adequate warning, a manufacturer is still liable for a foreseeable misuse. When the defect in the product is the lack of a safety device, the misuse is often an accidental misuse. In these situations, a warning, although it adequately informs of the danger, is of no help to the consumer. Strict products liability law should not punish manufacturers for unanticipated injuries from reasonably safe products, but it should encourage manufacturers to take all measures to avoid accidents from product misuse. Therefore, we must require manufacturers to make their products as safe as commercial feasibility and the state of the art will allow.

Many jurisdictions have adopted the rule that a manufacturer may be liable for the failure to provide a safety device if the inclusion of the device is commercially feasible, will not affect product efficiency, and is within the state of the art at the time the product was placed in the stream of commerce. Titus v. Bethlehem Steel Corp. 154 Cal.Rptr. 122 (Ct.App. 1979) (oil well pumping unit designed without adequate safety features may be considered defective). *See also* Fabian v. E.W. Bliss Co., 582 F.2d 1257 (10th Cir. 1987) (failure to incorporate a safety device

into a punch press renders manufacturer liable for design defect); Scott v. Dreis & Krump Manufacturing Co., 326 N.E.2d 74 (Ill.App. 1975) (manufacturer's liability for failure to put a safety guard on a press brake was a jury question); Fischer v. Cleveland Punch and Shear Works Co., 280 N.W.2d 280 (Wis. 1979) (failure to interlock circuits on punch press created foreseeable risk of injury). These cases promote a compound goal of encouraging manufacturers to make products safe without unduly burdening them with excessive liability without fault.

In *Titus, supra,* the court found a manufacturer liable when a child who was riding on an oil well pumping unit fell into the unguarded crank area. Even though the child's action was a misuse of the product, the court found the unit defective because it did not have a safety guard that would have prevented the injury. The court stated,

> [A]ny product so designed that it causes injury created when used or misused in a foreseeable fashion is defective if the design feature which caused the injury created a danger which was readily preventable through the employment of existing technology at a cost consonant with the economical use of the product. . . .

*Titus,* 154 Cal.Rptr. at 128. The *Titus* court recognized that factfinders must consider existing technology and commercial feasibility when evaluating whether a product is defective. Notwithstanding these factors, manufacturers are in the best position to include devices to make their products safe. If the technology is available, the cost is not prohibitive, and the product remains efficient, then a potentially dangerous product which lacks a safety device is in a defective condition.

This case differs from *Titus* because here the machine that caused the injury had warning decals. However, a warning is not an adequate replacement when a safety device will eliminate the need for the warning. If manufacturers have the choice between providing an effective safety screen or simply placing a decal on the product, cost will encourage the latter. Therefore, Instruction 22A, which informed the jury that an adequate warning will always shield manufacturers from liability, is not a correct statement of the law. Instead, warnings should shield manufacturers from liability *unless* the defect could have been avoided by a commercially feasible change in design that was available at the time the manufacturer placed the product in the stream of commerce.

Enterprise did include a safety screen in its product. The evidence shows that the screen was easily detachable and the

machine could function without the screen in place. Still, the employer did have to alter the machine slightly to make it function without the screen. Generally, a substantial alteration will shield a manufacturer from liability for injury that results from that alteration. Gasdiel v. Federal Press Co., 396 N.E.2d 1241 (Ill.App. 1979) (employer's substitution of a significantly different starting mechanism on a punch press shielded the manufacturer from liability when the press malfunctioned). However, if the alteration was insubstantial, foreseeable, or did not actually cause the injury, then the manufacturer of a defective product remains liable. *See* Medina v. Air-Mite, 515 N.E.2d 770 (Ill.App. 1987) (manufacturer of air press was not shielded from liability when the employer failed to install a safety device on the machine). In this case, the causal connection between the absent safety screen and the injury is clear. Therefore, the question left to the jury is whether the employer's act of overriding the limit switch was a substantial alteration of the product.[1]

## II. *Other accidents and analogous machines.*

Robinson tried to offer evidence at trial of other accidents that occurred with similar commercial machines to show that Enterprise knew of the danger this machine posed. This court has recognized that prior and subsequent accidents are admissible in an action based on strict liability. Beattie v. Thomas, 99 Nev. 579, 668 P.2d 268 (1983) (prior and subsequent mishaps are admissible to show faulty design); Ginnis v. Mapes Hotel Corp., 86 Nev. 408, 470 P.2d 135 (1970). In *Ginnis,* the plaintiff was injured in an automatic door. We held that evidence of prior and subsequent repair orders and subsequent accidents involving the same door were admissible to show a defective and dangerous condition and causation. *Id.* at 413, 470 P.2d at 139.

Robinson tried to offer evidence of safety devices on analogous machines to show that the interlocking guard that Enterprise should have included in the baler had been available for many years. This court has recognized that alternative safer designs are a factor in determining the existence of a design defect. McCourt v. J.C. Penney Co., 103 Nev. 101, 734 P.2d 696 (1987). In *McCourt,* we reversed a defense verdict because the jury was not given the opportunity to feel alternative safer fabrics, even though the defense expert claimed that such fabrics were uncomfortable and therefore not commercially feasible. We noted that

---

[1]Whether the machine should have contained a limit switch at all may be an additional issue if the appropriate evidence is presented at trial.

when commercial feasibility is in dispute, the court must permit the plaintiff to impeach the defense expert with evidence of alternative design. *Id.* at 103, 734 P.2d at 698. In this case, Enterprise's expert testified that the design was reasonably safe, and that it was the state of the art at the time it was built. Robinson should have had the chance to dispute that claim with evidence of alternative designs that were available at the time.[2]

### III. *Post-manufacture design changes.*

To comply with federal standards promulgated in 1982, Enterprise changed the design of its baler to include an interlocking safety guard. NRS 48.095 provides that subsequent remedial measures are not admissible to prove negligence or culpable conduct. Therefore, the court below excluded evidence of these design changes.

However, this court had previously adopted the rule that such measures are admissible in strict liability actions. Jeep Corporation v. Murray, 101 Nev. 640, 708 P.2d 297 (1985). In *Jeep,* the manufacturer sent warning stickers advising consumers that their vehicles lacked adequate occupant protection in the tops and doors. We concluded that the public policy reason to exclude such evidence in negligence actions does not apply in strict liability cases. *Id.* at 647, 708 P.2d at 302. A producer will not forego making improvements if failing to do so will subject it to additional lawsuits. Therefore, the better rule is to admit post-accident remedial measures, and let the jury decide if the manufacturer should have known how to correct the defect at the time it built the product.

### IV. *American National Standards Institute (ANSI).*

In 1982, ANSI promulgated design standards for baling machines. One of the standards at issue requires that the machine have an interlocking safety guard, meaning that the machine cannot function without the guard in place. Enterprise claims that its baler was interlocking, but it bases this claim on a pre-1982

---

[2]Enterprise claims that Robinson never laid a foundation that the analogous machines he tried to offer were in existence in 1979 when Enterprise placed its product in the stream of commerce. Other than argument of counsel, Robinson made no offer of proof showing that he could establish the date in question. Therefore, we make no ruling as to whether this particular evidence should have been admitted, or whether such a ruling, standing alone, would require reversal of this case. We hold only that alternative safer designs that existed at the time the product at issue was made are admissible to show that the product could have been made without the defect.

definition of interlocking, instead of the ANSI definition. The court below excluded evidence of the new standards because they did not exist when the manufacturer sold the machine, and therefore did not reflect the state of the art at that time.

Legislative or administrative regulatory standards are admissible as evidence of a product's safety. Falk v. Keene Corp., 782 P.2d 974 (Wash. 1989) (evidence of compliance with regulatory standards for asbestos products is relevant to the burden on the manufacturer to design a safe product); Walker v. Maxwell City, Inc., 453 N.E.2d 917 (Ill.App. 1983) (ANSI standards for motorcycle helmet admissible whether promulgated before or after the helmet was made). Enterprise argued that standards promulgated after the baler was sold should be inadmissible because Enterprise could not have complied with a standard not yet in existence. However, Enterprise could offer evidence of the relevant dates, and thereby give the jury full knowledge of the surrounding circumstances.

ANSI standards set design guidelines for manufacturers. The ramifications for failing to comply with a standard varies depending on the product and the nature of the industry. Enterprise could rebut any false presumptions a standard raises by informing the jury of the date the institute promulgated the standard, or by showing that the industry did not adhere to the standard when Enterprise sold the baler. However, these issues should go to weight, and not admissibility of the industry or regulatory standards themselves. Seward v. Griffin, 452 N.E.2d 558 (Ill.App. 1983). In *Seward,* the trial court admitted federal motor vehicle standards even though some were newer than the vehicle. The appellate court appropriately left to the jury the determination of whether the manufacturer could have been expected to adhere to the equivalent of the standard. *Id.* at 568.

In addition, post-manufacture industry standards are circumstantial evidence that alternative courses of conduct may have been available to an entire industry. D.L. By Friederichs v. Huebner, 329 N.W.2d 890 (Wis. 1983). In *Huebner* the court admitted evidence of post-manufacture industry standards which required manufacturers to include safety features on forage wagons. *Id.* at 896. In finding that a whole industry may have been producing a defective product, the court stated, "the question is not whether anyone else was doing more, although that may be considered, but whether the evidence discloses that anything more could reasonably and economically be done." *Id.* at 907

(quoting Hancock v. Paccar, Inc., 283 N.W.2d 25, 35 (Neb. 1979)). The best way to determine if a defendant should have built a safer product is to let the jury hear all the evidence relating to the course of conduct of both the industry, and the particular manufacturer.

### V.  Impeachment of the defense expert witness.

The district court excluded testimony regarding the relationship between Enterprise, Enterprise's counsel, and one of Enterprise's expert witnesses. The expert had testified many times for both Enterprise and its lawyer, who was in-house counsel for Enterprise.

Exposure of these relationships to the jury may have shown bias on the part of the expert. Robinson asserts that this type of impeachment is a standard trial tactic. The United States Supreme Court has emphasized that "the exposure of a witness's motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." Delaware v. Van Arsdall, 475 U.S. 673, 678-79 (1986). Although *Van Arsdall* is a criminal case which has stronger constitutional safeguards regarding cross-examination, the same reasoning regarding bias applies in a civil trial. Frank B. Hall & Co. v. Buck, 678 S.W.2d 612 (Tex.App. 1984). In *Hall,* the court admitted evidence of the witness's personal business dealings with the defendant corporation. The court held that, "[t]he jury should be given the opportunity to judge for themselves the witness's credibility in light of the relationship between the parties, the witness's motive for testifying, or any matter which would tend to influence the testimony given by a witness." *Id.* at 628.

Expert witness testimony is, in some respects, akin to a business arragement between the witness, the hiring attorney and the client. The trier of fact has the right to take business associations into account when determining the credibility of witnesses and the weight to give their testimony. Wittenberg v. Wittenberg, 56 Nev. 442, 452-53, 55 P.2d 619, 623 (1936) (in weighing the evidence, the factfinder considered the relationships and business associations between the litigants and their testifying witnesses). Robinson should have had the right to expose the witness's previous dealings with Enterprise or its counsel.

Robinson also asserts that the trial court erred by excluding certain parts of the deposition testimony of his witness, Richard Kassow. Kassow was a repairman who had worked on this machine several times. The trial court excluded (1) Kassow's

opinion as to how the safety screen was damaged; (2) Kassow's comparison of the design of this machine with that of another baler; and (3) a diagram that Kassow drew of this machine.

First, Kassow had heard from a third party how the machine was damaged. The trial court concluded the third-party's statement was inadmissible hearsay. However, that information is not hearsay if it is offered, not for the truth of the matter asserted, but to show its effect on the hearer. *See* 6 J. Chadbourn, *Wigmore on Evidence,* 314 (1976). Here, the statement was offered for its effect on Kassow and showed how Kassow formed his opinion regarding the damage to the baler, and how he chose to fix it. For that purpose, his opinion on this issue should have been admitted.

Second, the court excluded Kassow's comparison of this machine to another baler because Robinson could not show the date the other baler was built. Without such a showing, the court was correct to exclude that evidence. Finally, the court excluded Kassow's drawing because it found the drawing was cumulative and misleading. This decision was within the discretion of the trial court.

## CONCLUSION

Consequently, rulings of the district court constituted prejudicial error to Robinson. First, Jury Instruction 22A does not adequately reflect strict products liability law regarding legally sufficient warnings in light of commercial feasibility, the relevant state of the art, and the foreseeable misuse of a product. Second, so long as adequate foundations are laid, the court should admit evidence of: (1) prior and subsequent accidents with analogous machines, (2) analogous machine designs available in 1979, (3) post-manufacture pre-accident design changes, and (4) ANSI standards for this machine or for analogous machines promulgated before the date of the accident. Finally, relationships between witnesses and the parties or their counsel are admissible to show possible bias of a witness.

For the reasons stated above, we reverse the judgment for defendant Enterprise and remand this case to the district court for a new trial.

MOWBRAY, C. J., SPRINGER, STEFFEN and YOUNG, JJ., concur.