## DAVID EADS and JILL EADS, Appellants, v. R.D. WERNER CO., INC., Respondent.

No. 22201

March 8, 1993                      847 P.2d 1370

*Burris & Thomas* and *Laurence Springberg,* Las Vegas, for Appellants.

*Earley & Dickinson,* Las Vegas, for Respondent.

## OPINION

*Per Curiam:*

### The Facts

In August, 1984, David Eads (Eads) suffered injuries when he fell from a ladder. Eads sued R.D. Werner Co., Inc. (Werner), the manufacturer of the ladder, for strict liability. Eads alleged that Werner defectively designed and/or manufactured the ladder and, as such, it was unreasonably dangerous.

The ladder in question was Werner's Mark I extension ladder (Mark I). The ladder contained two side rails, requiring that the ladder user lean it against a vertical structure. Werner placed an instruction on the ladder informing the user of the proper angle at which to tilt the ladder. Werner also placed a warning label on the ladder which provided: "DO NOT OVER-REACH. Always keep

belt buckle between the side rails when climbing or working from ladder. You may lose your balance and/or tip the ladder.'' Werner manufactured the Mark I from 1978 until July, 1982. In July, 1982, Werner began manufacturing a replacement model for the Mark I, called the Mark II. The Mark II had thicker side rails than the Mark I and contained additional guide rail clips for the extension section of the ladder.

Daniel Cashdan (Cashdan), a structural engineer, conducted a post-accident inspection of the ladder Eads used. At trial, Cashdan explained that when there is a rocking motion on the Mark I—when a person walks up the ladder—the feet of the ladder can rotate so that the bottom portions are not flush with the ground, or stated differently, the feet can ''cock'' like the hammer of a gun. Apparently, as Eads climbed the ladder, the right foot cocked (up to three-quarters of an inch) and then uncocked. When the right foot of the ladder hit the ground, the rail suffered a downward compressive force, causing a buckle in the side rail and damage to the foot of the ladder. As a result, Eads fell. According to Cashdan, the Mark II's side rail and guide rail clips would resist and avoid such compression buckling better than the Mark I.

Werner's position at trial was that the ladder was not defective, that Eads did not heed the warning on the ladder against overreaching or follow the instructions as to proper use, and that the accident was caused by Eads' misuse of the product. The misuse Werner asserts was Eads leaning too far to the right when painting from the ladder and thereby falling.

Following the trial, the jury returned a verdict for Werner. Eads moved for a new trial and/or judgment notwithstanding the verdict, which the district court denied. On appeal, Eads argues, among other things, that the district court improperly instructed the jury regarding the legal effect of the warnings on the ladder. We agree and therefore reverse.

## Discussion

### Jury Instruction

In Robinson v. G.G.C., Inc., 107 Nev. 135, 808 P.2d 522 (1991), the district court instructed the jury: ''A product which bears suitable and adequate warnings concerning the safe manner in which the product is to be used and which is safe to use if the warning is followed is not in a defective condition.'' *Id.* at 138, 808 P.2d at 524. Because the instruction stated that an adequate warning will *always* shield the manufacturer from liability, this court held that it was an incorrect statement of the law. *Id.* at 139, 808 P.2d at 525. Instead, this court stated:

> [W]arnings should shield manufacturers from liability *unless* the defect could have been avoided by a commercially feasible change in design that was available at the time the manufacturer placed the product in the stream of commerce.

*Id.*

In the instant case, the district court instructed the jury as follows:

> Where an instruction or warning is given, the manufacturer may reasonably assume that it will be read and heeded; and a product bearing such a warning, that is safe for use if it is followed, is not in defective condition, nor is it unreasonably dangerous.

Eads argues that the district court erred by not giving an instruction similar to the one put forth by this court in *Robinson.* Eads contends that the defects in the Mark I could have been avoided prior to its manufacture in July, 1982. Specifically, the thicker side rail and the new guide brackets contained in the Mark II were known and available to Werner years prior to July, 1982, and these changes would have reduced the "cocking phenomenon" which allegedly contributed to his accident.

Werner argues that *Robinson* is inapplicable because the instant case does not involve a safety device. We cannot agree. While *Robinson* involved a product which was allegedly defective because it lacked a safety device, the holding was not fact specific. This is evident by the issue presented for review: "[W]hen, in spite of an adequate warning, a manufacturer is still liable for a foreseeable misuse." *Id.* at 138, 808 P.2d at 524. Thus, *Robinson* applies in the instant case. Given the erroneous instruction, the jury could have easily concluded that since the warning was given, the ladder was not defective even if there was a commercially feasible design available when it was manufactured that probably would have prevented the accident.

We conclude that the jury instruction given in the instant case is indistinguishable from the instruction given in *Robinson,* and that the district court erred in so instructing the jury.

We have carefully considered all of the other issues raised and conclude that they either lack merit or need not be addressed given our disposition of this appeal. Because the district court erred in giving the stated jury instruction, we reverse the judgment of the district court and remand this case for a new trial.[1]

---

[1] THE HONORABLE MIRIAM SHEARING, Justice, did not participate in the decision of this appeal.