76 F.3d 386
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
James Daniel GARIS, Plaintiff-Appellant,
v.
CONMAT ENGINEERING, LTD., a Canadian corporation; Ensteel,
a Canadian corporation, Defendants-Appellees.
 No. 94-15925.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Nov. 16, 1995.
Decided Jan. 30, 1996.
 
 Before: NORRIS, BEEZER, and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Plaintiff James Daniel Garis appeals from a judgment entered pursuant to a jury verdict for defendants Ensteel and Conmat Engineering, Ltd., Canadian corporations, in this products liability case. Garis appeals the district court's refusal to give three proposed jury instructions. We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.
 
 
 3
 * On October 3, 1990, Garis severely injured his left arm when it was drawn into the head pulley area of a rock screening plant. Garis filed suit claiming that Conmat, the designer of the rock screening plant, and Ensteel, the manufacturer, were strictly liable under Nevada products liability law for his injury. At trial, Garis contended that the plant was defective because it failed to have a guard covering the head pulley area. Conmat and Ensteel, on the other hand, argued that a guard was not necessary and would not have protected Garis. The jury rendered its verdict in favor of Conmat and Ensteel.
 
 
 4
 Garis appeals contending that he was prejudiced by the district court's refusal to give three of his proposed jury instructions. The first two proposed instructions concerned the lack of a safety device as a product defect, while the third instruction dealt with the nondelegable nature of the duty to manufacture reasonably safe products.
 
 II
 
 5
 A party is entitled to an instruction concerning his theory of the case provided that it accurately states the law and has some foundation in the evidence. Smith v. Sumner, 994 F.2d 1401, 1404 (9th Cir.1993). Because this is a diversity action, Nevada law controls the substantive content of the jury instructions. In re Hawaii Fed. Asbestos Cases, 960 F.2d 806, 814 (9th Cir.1992). Federal law, however, controls "the determination of whether an incorrect instruction results in prejudicial error." Id.
 
 
 6
 The appropriate standard of review for a district court's denial of a party's proposed jury instruction depends on the nature of the alleged error. When the alleged error is in the formulation of the instructions, we consider the instructions as a whole and apply an abuse of discretion standard to determine if they are adequate. Fikes v. Cleghorn, 47 F.3d 1011, 1013 (9th Cir.1995). If, however, the claim is that the district court misstated the elements to be proved at trial, we apply a de novo standard of review. Gizoni v. Southwest Marine Inc., 56 F.3d 1138, 1142 (9th Cir.), cert. denied, 116 S.Ct. 381 (1995).
 
 III
 
 7
 Garis first challenges the district court's refusal to give two proposed jury instructions concerning when, due to the lack of a safety device, a machine is defective under Nevada law. The district court rejected the instructions because it concluded that they were misstatements of the law and that their subject was adequately covered by other instructions given. These are questions of law which we review de novo. Gizoni, 56 F.3d at 1142.
 
 The first proposed instruction read:
 
 8
 A product is defective if it lacks a safety device if the inclusion of the safety device is commercially feasible, will not affect the product efficiency, and is within the state of the art at the time the product was placed in the stream of commerce.
 
 The second, related instruction read:
 
 9
 You must consider existing technology and commercial feasibility when evaluating whether a product is defective. Notwithstanding these factors, manufacturers are in the best position to include devices to make their products safe. If the technology is available, the cost is not prohibitive, and the product remains efficient, then a potentially dangerous product which lacks a safety device is in a defective condition.
 
 
 10
 Each of these instructions was virtually a verbatim quote from Robinson v. G.G.C., Inc., 808 P.2d 522, 524-25 (Nev.1991). Robinson decided the issue whether a warning on a product is sufficient to avoid strict liability if a safety device on the product would have eliminated the need for the warning. The court held that "warnings should shield manufacturers from liability unless the defect could have been avoided by a commercially feasible change in design that was available at the time the manufacturer placed the product in the stream of commerce." Id. at 525 (emphasis in original).
 
 
 11
 In reaching its conclusion, the Robinson court noted that
 
 
 12
 many jurisdictions have adopted the rule that a manufacturer may be liable for the failure to provide a safety device if the inclusion of the device is commercially feasible, will not affect product efficiency, and is within the state of the art at the time the product was placed in the stream of commerce.
 
 
 13
 Id. at 524 (relying primarily on Titus v. Bethlehem Steel Corp., 154 Cal.Rptr. 122 (1979)). It was from this notation and a subsequent notation that Garis quoted his proposed instructions. Garis thus quoted dicta.
 
 
 14
 Garis's proposed use of the language from Robinson would have been misleading to the jury because the language chosen by Garis is not sufficiently precise. Titus, the case on which the holding in Robinson primarily relied, is instructive. According to Titus, a product is defective due to the lack of a safety device if the inclusion of such a device is commercially feasible, does not affect efficiency, is within the state of the art, and is "necessary for [the product's] reasonable safety." Titus, 154 Cal.Rptr. at 128.
 
 
 15
 This fourth requirement is implied in Robinson's holding that a warning is insufficient if a product's "defect" could be avoided by a safety device meeting the first three requirements. 808 P.2d at 525. Under Nevada law, in order to prove a product has a design defect, one must prove that because of its design the product is "unreasonably dangerous." Ward v. Ford Motor Co., 657 P.2d 95, 96 (Nev.1983) (per curiam). Thus, a safety device is required instead of a warning only if, in addition to being feasible, the safety device corrects a product's unreasonably dangerous condition. Garis's proposed instructions were misleading, and misstatements of the law, because they failed to include this vital element.
 
 
 16
 The fact that Garis's proposed instructions were misleading, however, does not mean that the district court could summarily refuse to give them. Instead, if the instructions were supported by law and the evidence and were not adequately covered by other instructions, the court should have given a non-misleading instruction capturing the substance of the proposed instructions. See Ragsdell v. Southern Pac. Transp. Co., 688 F.2d 1281, 1283 (9th Cir.1982) (per curiam). Because there was no dispute that a guard was commercially feasible, would not have affected the efficiency of the machine, and was within the state of the art, the meaningful substance of the proposed instructions was that the lack of a safety device could be a product defect.
 
 
 17
 That the lack of a safety device can be a product defect is a correct statement of Nevada law, and an instruction to that effect would have been consistent with Garis's theory of the case. Therefore, Garis was entitled to such an instruction unless the instructions that were given adequately covered his theory. The district court gave the following instructions:
 
 
 18
 In order to establish a claim of strict liability for a defective product, the plaintiff must prove the following elements by a preponderance of the evidence:
 
 
 19
 * * *
 
 
 20
 2. That the product was defective;
 
 
 21
 ....
 
 
 22
 A product is defective in its design if, as a result of its design, the product is unreasonably dangerous.
 
 
 23
 A product is in a defective condition unreasonably dangerous to the user when it has a propensity for causing physical harm beyond that which would be contemplated by the ordinary user or consumer, with the ordinary knowledge common to the foreseeable class of users as to its characteristics. A product is not defective or unreasonably dangerous merely because it is possible to be injured while using it.
 
 
 24
 Although the instructions given do not explicitly state that the lack of a safety device can make a product defective, the instructions given adequately cover this theory of the case. The instructions make it clear that a design, which would include the choice not to install a guard, is defective if it makes the product unreasonably unsafe. The instruction given by the court allowed Garis the opportunity to argue in his closing argument that the lack of a guard made the rock screening plant defective, and in fact, he argued just that.
 
 IV
 
 25
 Garis next challenges the district court's refusal to give a proposed jury instruction concerning a manufacturer's nondelegable duty to manufacture reasonably safe products. The district court rejected the instruction because it concluded that the instruction was not supported by the evidence. Because the parties dispute whether the instruction had a foundation in the evidence, Garis's challenge is to the formulation of the instructions given. We thus apply an abuse of discretion standard of review. Fikes, 47 F.3d at 1013.
 
 The third proposed instruction read:
 
 26
 The manufacturer has the obligation to manufacture and sell a product which is not in a defective condition and unreasonably dangerous. Since that obligation cannot be delegated to another, it is not a defense for the manufacturer that another person, including the plaintiff's employer or federal inspectors, failed to inspect the product properly.
 
 
 27
 When I use the term "cannot be delegated" in these instructions, I mean that the duty must be performed by the person upon whom it is placed and cannot be left to some other person or individuals, including the plaintiff's employer or federal inspectors.
 
 
 28
 As authority for this instruction, Garis cited Renfro v. Allied Indus. Equip. Corp., 507 N.E.2d 1213 (Ill.App.Ct.), appeal denied, 515 N.E.2d 125 (Ill.1987).
 
 
 29
 Garis argues that he was entitled to a delegation instruction because certain testimony presented by Conmat and Ensteel as well as their closing argument implied that someone other than they was responsible for determining whether a guard was necessary. Gerald Stotts, the representative of Conmat and Ensteel, testified that while he could have built a guard, his customer did not request one. Easton Blackburn, a safety engineer for Frehner Construction, testified that state and federal mine inspectors had audited the machine and did not recommend a guard. Richard McAlexander, a retired federal mine inspector, testified that a guard was unnecessary. Finally, counsel for Conmat and Ensteel argued in closing that federal and state investigators did not recommend a guard. Counsel further argued that it was the custom in the industry that people at the job site will often put guards on the machines because manufacturers do not know how the machines will be used.
 
 
 30
 Conmat and Ensteel argue that the delegation instruction was correctly rejected because the implicated testimony and argument simply showed that people familiar with the actual operation of the product and experts in the field agreed that a guard was unnecessary. The district court agreed that the instruction was not supported by the evidence.
 
 
 31
 The district court rejected the second sentence of the instruction because there was no evidence that the inspectors or Garis's employer failed to inspect the machine properly. The court rejected the remaining portion of the instruction because the court concluded there was no evidence that the manufacturer attempted to shift responsibility to the buyer to determine if guards were needed. Just calling witnesses who are familiar with the product in their official capacities to testify that it is not unreasonably dangerous, the court determined, was not sufficient to imply a delegation.
 
 
 32
 The district court did not abuse its discretion when it rejected the proposed instruction. The expert testimony that the guard was unnecessary supported the defense theory that the product was not unreasonably dangerous. It did not suggest that those experts were responsible for the ultimate determination whether the guard was needed.
 
 
 33
 The testimony by Stotts and the closing argument about the custom in the industry also did not necessitate the giving of the instruction. No testimony was offered that Conmat and Ensteel attempted to directly delegate their duty to put guards on their products or to make reasonably safe products. The district court did not abuse its discretion when it concluded that the fact that buyers sometimes put additional guards on their machines does not imply that Conmat and Ensteel delegated the duty to manufacture non-defective products to them.
 
 V
 
 34
 The district court properly refused to give Garis's proposed jury instructions. As proposed, the first two instructions were incorrect statements of Nevada law, and once corrected, their subject was adequately covered by other instructions given. The third instruction was not supported by the evidence.
 
 
 35
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or used by the courts of this circuit except as provided by Ninth Circuit Rule 36-3