134 Nev., Advance Opinion 108

# IN THE SUPREME COURT OF THE STATE OF NEVADA

|  |  |
|---|---|
| ALBERT H. CAPANNA, M.D., Appellant/Cross-Respondent, vs. BEAU R. ORTH, Respondent/Cross-Appellant. | No. 69935 |
| ALBERT H. CAPANNA, M.D., Appellant, vs. BEAU R. ORTH, Respondent. | No. 70227 **FILED** DEC 27 2018 |

Consolidated appeals and cross-appeal from final judgment after a jury verdict and post-judgment orders in a medical malpractice suit. Eighth Judicial District Court, Clark County; Douglas W. Herndon, Judge.

*Appeals affirmed; cross-appeal dismissed.*

Lemons, Grundy & Eisenberg and Robert L. Eisenberg, Reno; Lauria, Tokunaga, Gates & Linn, LLP, and Anthony D. Lauria, Las Vegas, for Appellant/Cross-Respondent.

Eglet Prince and Dennis M. Prince and Kevin T. Strong, Las Vegas; Danielle Tarmu, Las Vegas, for Respondent/Cross-Appellant.

Catherine M. O'Mara, Reno, for Amicus Curiae Nevada State Medical Association.

Erin G. Sutton, Chicago, Illinois, for Amicus Curiae American Medical Association.

18-910528

BEFORE THE COURT EN BANC.[1]

*OPINION*

By the Court, STIGLICH, J.:

Dr. Albert Capanna operated on Beau Orth to repair a disc herniation. Unfortunately, Capanna entered the wrong disc resulting in severe damage that necessitated additional surgery. Orth filed a complaint against Capanna, alleging medical malpractice and negligence. The jury found that Capanna's negligence caused Orth harm and, accordingly, awarded Orth a significant judgment against Capanna.

Capanna does not dispute his negligence in this appeal. Rather, he argues that the trial was unfair due to various rulings by the district court and attorney misconduct in closing argument. Capanna also disputes the district court's award of attorney fees and costs. On cross-appeal, Orth challenges the constitutionality of NRS 42.021. For the reasons set forth below, we affirm the judgment on the jury verdict and the district court's orders awarding attorney fees and costs. Lastly, we conclude that Orth lacks standing for his cross-appeal and dismiss the same.

*BACKGROUND*

Orth was a student-athlete with a scholarship to play football for the University of Nevada, Las Vegas. When he developed low back and leg pain, he was referred to Dr. Capanna. An MRI showed that Orth was suffering from a bulging disc between his fifth lumbar and first sacral vertebrae (L5-S1). Capanna recommended surgery to resolve the disc issue at that level and, according to Orth, told him that he would likely be able to return to playing football within weeks of the planned surgery. In

---

[1]The Honorable Ron D. Parraguirre, Justice, did not participate in the decision of this matter.



September 2010, Capanna operated on Orth, intending to perform an L5-S1 microdiscectomy to repair the disc herniation.

Following the surgery, Orth's pain increased dramatically to the point where he could barely walk, with pain he described as the worst imaginable. Due to the severity of his symptoms, Orth sought a second opinion from Dr. Andrew Cash. Dr. Cash noted that Orth appeared "crippled" and that he had "a disability of 94 percent." Dr. Cash reviewed a post-operative MRI and was surprised to see that the L4-5 disc had been operated on and not the L5-S1 disc.[2] Dr. Cash believed Orth still required surgery on the L5-S1 disc, as had been intended, but that Orth also required additional surgery on the L4-5 disc to address Orth's severe symptoms.

Orth sued Capanna. After an 11-day trial, the jury found that Capanna was negligent in his care and treatment of Orth and that his negligence was the legal cause of Orth's injuries. The jury awarded Orth $136,300.49 in past medical expenses; $350,000 in future medical expenses; $1,800,000 in past pain, suffering, disability, and loss of enjoyment of life; and $2,000,000 in future pain, suffering, disability, and loss of enjoyment of life. Pursuant to NRS 41A.035, the district court reduced the noneconomic damages to $350,000. Additionally, the district court partially granted Orth's motion for attorney fees, pursuant to NRS 18.010(2)(b), after finding that Capanna maintained his liability defense without reasonable grounds. Lastly, the district court awarded costs to Orth, including $69,975.95 for expert witness fees.

## DISCUSSION

On appeal, Capanna asserts that Orth's counsel committed misconduct during closing argument by advocating for jury nullification and

---

[2]Capanna later admitted to his belief that he entered the L4-5 disc during Orth's surgery.

by making golden rule arguments. Capanna also challenges the district court's restrictions on his cross-examination of an expert witness and its admission of two doctors' opinions as to future medical care and expenses. Lastly, Capanna claims that the district court abused its discretion in awarding attorney fees and costs following trial. On cross-appeal, Orth asks this court to consider the constitutionality of NRS 42.021.

*Attorney misconduct*

Capanna seeks a new trial based on attorney misconduct during closing argument.[3] Namely, Capanna argues that Orth's counsel committed misconduct by advocating jury nullification and by making golden rule arguments, tactics we have denounced.

We have reviewed the comments that Capanna says advocated for jury nullification and, when viewed in context, conclude that counsel

---

[3]Capanna also argues that Orth's counsel violated an order precluding reference to medical malpractice insurance and repeatedly raised the issue during jury selection. Capanna moved for a mistrial based on these comments, which was denied. We have reviewed the challenged comments and conclude that the district court did not abuse its discretion by denying Capanna's motion for a new trial because the record reflects that a potential juror raised the issue during jury selection in response to an innocuous question and that Orth's counsel asked potential jurors if they could follow the law. *See Romo v. Keplinger*, 115 Nev. 94, 96, 978 P.2d 964, 966 (1999) ("The decision to grant a mistrial is within the sound discretion of the trial court and will not be overturned absent an abuse of discretion." (internal quotation marks omitted)).

On appeal, Capanna further alleges that Orth's counsel continued to violate the order during closing argument; Capanna did not object to these statements. We conclude counsel's closing argument did not amount to irreparable and fundamental error warranting relief for unobjected-to attorney misconduct. *See Lioce v. Cohen*, 124 Nev. 1, 19, 174 P.3d 970, 982 (2008) (setting forth the applicable standard of review for unobjected-to attorney misconduct). The record demonstrates that counsel simply encouraged jurors to pay attention to the jury instructions.

merely argued the role of the jury in the deliberative process. Jury nullification is the "knowing and deliberate rejection of the evidence or refusal to apply the law either because the jury wants to send a message about some social issue . . . or because the result dictated by law is contrary to the jury's sense of justice, morality, or fairness." *Lioce v. Cohen*, 124 Nev. 1, 20, 174 P.3d 970, 982-83 (2008) (quoting *jury nullification*, *Black's Law Dictionary* (8th ed. 2004)). To the extent there were statements asking the jury to send a message, we have held that "such arguments are not prohibited so long as the attorney is not asking the jury to ignore the evidence." *Pizarro-Ortega v. Cervantes-Lopez*, 133 Nev. 261, 269, 396 P.3d 783, 790 (2017). Here, it is clear that counsel did not implore the jury to disregard the evidence. *See Lioce*, 124 Nev. at 20, 174 P.3d at 982 ("Whether an attorney's comments are misconduct is a question of law, which we review de novo . . . ."). As we concluded in *Pizarro-Ortega*, counsel asked the jury to arrive at its decision *"based on the evidence."* 133 Nev. at 269, 396 P.3d at 790. Therefore, counsel did not improperly advocate for jury nullification.

We do, however, conclude that counsel improperly made golden rule arguments. During closing argument, Orth's counsel argued "[w]ho would volunteer—what reasonable person would volunteer to—give up their hopes and dreams and suffer a lifetime—." After Capanna objected and the district court disagreed, Orth's counsel continued:

> And what reasonable person would give up their hopes, their dreams and agree to suffer a lifetime of pain, discomfort and limitation for money? Would it be a million dollars—if I give you a million dollars today, but I give you a 65-year-old man's spine, you won't be able to finish playing your college career, you're going to have discomfort and as you get older, it's going to get worse with time, you're going

to need future surgeries, who would do that? Who would sign up for something like that?

. . . .

But when someone else puts you in a situation where you've lost out on your opportunity to enjoy the prime of your life, that now you suffer chronic pain and that it's going to get worse with time—when you have to listen to that, that it's going to get—my condition's going to get worse with time, it'll never improve.

Whereas Capanna focuses on the number of times the word "you" was used, we focus on the context in which the challenged comments arose. Counsel walked a fine line, artfully wording his argument as a hypothetical at times, but ultimately his argument asked the jurors to consider how they would feel if they were faced with the same challenges as Orth due to Capanna's negligence. Put simply, counsel's argument veered from hypothetical to Orth's exact scenario. That argument, asking the jurors to consider what it would be like if they were in Orth's situation, is precisely the type of argument we have prohibited as golden rule argument. *Lioce*, 124 Nev. at 22, 174 P.3d at 984 (an argument that "ask[s] jurors to place themselves in the position of one of the parties" is a golden rule argument).

Despite this improper argument, we conclude that an admonition by the district court would not have affected the jury's verdict and that Capanna's substantial rights were not affected by the misconduct. *See id.* at 18, 174 P.3d at 981 (providing that "[w]hen a party objects to purported attorney misconduct but the district court overrules the objection[,]" the court must consider "whether an admonition to the jury would likely have affected the verdict" and "whether a party's substantial rights were affected by the court's failure to sustain the objection and admonish the jury"). The evidence, including Capanna's own testimony, established that Capanna entered the wrong disc during surgery. Orth, a

SUPREME COURT
OF
NEVADA

(O) 1947A

6

20-year-old student-athlete, ultimately had surgery at two different disc levels (versus the one-level surgery that was supposed to be performed by Capanna) and, consequently, is likely to require future surgery. Orth was unable to resume collegiate athletics and continues to experience pain despite remedial treatment and therapy. The verdict and award of damages do not evince a jury controlled by emotions and sympathies but rather a thoughtful contemplation of the evidence presented. Of note, the jury did not award Orth all requested future medical expenses. Accordingly, we decline to reverse the judgment based on this misconduct.

*Restrictions on cross-examination*

Capanna argues that the district court improperly limited his cross-examination of Dr. Cash, specifically with regard to Dr. Cash's relationship with Orth's counsel. This court has held that a "district court has discretion to limit the scope of cross-examination . . . [but] that the district court's discretion to curtail cross-examination is more limited if the purpose of cross-examination is to expose bias." *Crawford v. State*, 121 Nev. 744, 758, 121 P.3d 582, 591 (2005); *see also Robinson v. G.G.C., Inc.*, 107 Nev. 135, 143, 808 P.2d 522, 527 (1991) (extending to the realm of civil proceedings the criminal-law principle that exposure of a witness's bias or motivation is proper subject for cross-examination). In so holding, we have recognized the importance of exposing relationships so that the jury may "judge for themselves the witness's credibility in light of the relationship between the parties, the witness's motive for testifying, or any matter which would tend to influence the testimony given by a witness." *Robinson*, 107 Nev. at 143, 808 P.2d at 527 (internal quotation marks omitted). One such relationship that might influence an expert witness's testimony is the "business arrangement between the witness, the hiring attorney and the client." *Id.* The jury therefore has a right to consider that relationship

"when determining the credibility of [expert] witnesses and the weight to give their testimony." *Id.* Even so, the district court "retain[s] wide latitude to restrict cross-examination to explore potential bias based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness'[s] safety, or interrogation that is repetitive or only marginally relevant." *Leonard v. State*, 117 Nev. 53, 72, 17 P.3d 397, 409 (2001) (internal quotation marks omitted).

During deposition, Dr. Cash stated that he had worked with Orth's counsel, or counsel's firm, approximately three to four dozen times. Before trial, Orth moved to preclude Capanna from referring to Dr. Cash's work with Orth's counsel on unrelated cases, and the district court granted the motion in part. Recognizing the potential for bias, the district court allowed Capanna to ask Dr. Cash about his history of testifying for plaintiffs and defendants and whether he had worked with Orth's counsel before. The district court only precluded Capanna from eliciting the number of times Dr. Cash had worked with Orth's counsel or counsel's firm, finding that information irrelevant. At trial, Dr. Cash testified as to his work as an expert with Orth's counsel, on behalf of plaintiffs and defendants, as well as to his payments for time and testimony.

There is no question that Dr. Cash's testimony was a critical part of Orth's case. Dr. Cash was not only Orth's treating physician, performing the second surgery, but he was also designated an expert witness for trial. The district court recognized the importance of allowing Capanna to explore Dr. Cash's possible bias but restricted Capanna's cross-examination by disallowing questions *as to the number of times* Dr. Cash had worked with counsel or counsel's firm. However, the district court's ruling did not preclude Capanna from exposing possible bias between Dr. Cash and Orth's counsel, as Capanna was free to ask other questions to

develop the same information.[4] That Capanna's cross-examination of Dr. Cash as to possible bias was not extensive does not demonstrate that the district court's ruling was a severe limitation on his cross-examination. The record reveals that Capanna failed to explore the vast areas available to develop bias that were not covered by the district court's ruling. Instead, we conclude this minor restriction by the district court did not curtail Capanna's ability to explore Dr. Cash's potential bias and was a proper exercise of the district court's discretion.

*Future medical care and expenses*

Capanna argues the district court erred in allowing two doctors—Dr. Cash and Dr. Kevin Yoo—to opine about Orth's future medical care and expenses because their related reports and disclosures were untimely.[5] Capanna claims that Orth improperly supplemented his designation of expert witnesses in May 2015 with new opinions and information that were available long before the disclosure. Capanna asserts that there was no good cause for the late disclosures and therefore the related opinions should have been excluded at trial in August 2015. Capanna alleges prejudice in that he was deprived of a meaningful opportunity to conduct discovery and thorough depositions of the two doctors.

---

[4]For example, the district court's ruling did not preclude Capanna from asking Dr. Cash what percentage of his practice was devoted to work as an expert witness or what percentage of his income came from reimbursement from Orth's counsel or counsel's firm.

[5]On appeal, Capanna also complains about the late disclosure of another doctor's, Dr. Anthony Ruggeroli's, opinions as to future treatment and expenses. However, Capanna concedes that Dr. Ruggeroli did not testify at trial, and Orth did not request future medical expenses related to Dr. Ruggeroli's opinions. Accordingly, Capanna was not harmed by the district court's ruling in this respect. NRCP 61.

 

This court reviews a district court's decision regarding the admissibility of expert testimony for an abuse of discretion. *Schwartz v. Estate of Greenspun*, 110 Nev. 1042, 1046, 881 P.2d 638, 640 (1994). Pursuant to NRCP 16.1(a)(2), both parties were required to disclose the identity of anyone they intended to call as an expert witness at trial and to provide a written report prepared and signed by that witness. And we clarified in *FCH1, LLC v. Rodriguez*, 130 Nev. 425, 434, 335 P.3d 183, 189-90 (2014), when a treating physician must provide an expert report. Additionally, a party is required pursuant to NRCP 16.1(a)(1)(C) to make an initial disclosure regarding the computation of the damages claimed, including future medical expenses. *See Pizarro-Ortega*, 133 Nev. at 264-66, 396 P.3d at 786-87. "A party is under a duty to supplement at appropriate intervals its disclosures under Rule 16.1(a) . . . if the party learns that in some material respect the information disclosed is incomplete or incorrect and if the additional or corrective information has not otherwise been made known . . . ." NRCP 26(e)(1). If a party fails to comply with the disclosure requirements of NRCP 16.1 or NRCP 26(e)(1), the party cannot use any witness or information not so disclosed unless the party shows a substantial justification for the failure to disclose or unless the failure is harmless. NRCP 37(c)(1); *see also* NRCP 16.1(e)(3)(B).

The issue before us is not whether Dr. Cash and Dr. Yoo were required to prepare reports, as both parties agree that the doctors prepared such reports. Nor is the issue whether Orth was required to disclose a dollar-figure computation for his claim for future medical expenses, as both parties agree that such an amount was provided. Rather, the issue is whether the district court abused its discretion when it allowed the doctors to testify as to their opinions as to future medical care and as to the future-

(O) 1947A

medical-expenses computation when Capanna claims the information was not initially disclosed and was untimely supplemented.

At a hearing on Capanna's countermotion to exclude the testimony, the district court noted that the disclosures were made within the discovery deadlines, albeit late in the discovery process. The district court also noted the changing nature of medical treatment in general as well as the possibility of collecting more information with each doctor's visit. The district court recognized that Capanna was on notice of Orth's request for future damages and discussed Capanna's ability to review and prepare for challenges to the future care amounts. It also stated that it understood "why the disclosures were being made at the time they were being made by [Orth]." The district court carefully considered the timeliness of Orth's disclosures and found that Orth satisfied his duty to supplement the disclosures "at appropriate intervals." NRCP 26(e)(1). To the extent Orth's disclosures could be viewed as not complying with the NRCP, the district court's remarks demonstrate its belief that Capanna was not harmed by the timetable of Orth's disclosures. *See* NRCP 37(c)(1). Based on the record before us, we are unable to discern an abuse of discretion by the district court in allowing this testimony. *See Leavitt v. Siems*, 130 Nev. 503, 509, 330 P.3d 1, 5 (2014) ("An abuse of discretion occurs when no reasonable judge could reach a similar conclusion under the same circumstances.").

*Attorney fees and costs*

Capanna challenges both the award of attorney fees and costs following trial. The district court's decision to award attorney fees is within its discretion and "will not be disturbed on appeal absent a manifest abuse of discretion." *Bobby Berosini, Ltd. v. People for the Ethical Treatment of Animals*, 114 Nev. 1348, 1353-54, 971 P.2d 383, 386 (1998). And the

 

decision to award costs is also "within the sound discretion of the [district] court." *Id.* at 1352, 971 P.2d at 385.

NRS 18.010(2)(b) allows the district court to award attorney fees to a prevailing party "when the court finds that the claim, counterclaim . . . or defense of the opposing party was brought or maintained without reasonable ground or to harass the prevailing party." "The court shall liberally construe the provisions of [NRS 18.010(2)(b)] in favor of awarding attorney's fees in all appropriate situations," and "[i]t is the intent of the Legislature that the court award attorney's fees pursuant to [NRS 18.010(2)(b)] . . . in all appropriate situations to punish for and deter frivolous or vexatious claims and defenses." *Id.* "For purposes of NRS 18.010(2)(b), a claim is frivolous or groundless if there is no credible evidence to support it." *Rodriguez v. Primadonna Co.*, 125 Nev. 578, 588, 216 P.3d 793, 800 (2009).

In granting Orth's motion for attorney fees, the district court determined that the defense as to liability was maintained without reasonable ground:

> The presentation of evidence on Defendant's liability, which it should be noted included evidence and opinions from some of Defendant's own experts, was overwhelming. It could not only be characterized as clearly exceeding the civil burden of proof standard but, arguably, the totality of evidence showing that the original surgery was performed at the wrong level of the spine would meet a "beyond a reasonable doubt" standard.

In contrast, the district court acknowledged that Capanna's defense as to damages was made and maintained with reasonable grounds. Accordingly, the court only awarded attorney fees it estimated were incurred during the liability portion of the trial, 80 percent of the total fees.

 

Capanna argues the district court used the wrong standard for determining whether his liability defense was maintained without reasonable grounds, as the district court found evidence of his liability "overwhelming" but did not find there was no credible evidence to support his defense. While the district court may not have explicitly used the words "no credible evidence," the district court's order, which included the observation that some evidence of Capanna's liability came from his own experts, clearly evinces its belief that there was no credible evidence. Given the record supporting the district court's assessment of the evidence establishing Capanna's liability and the Legislature's mandate that the district court liberally construe the statute in favor of awarding attorney fees, we find no abuse of discretion in the district court's decision to award Orth's attorney fees reasonably incurred during the liability portion of the trial.[6]

Regarding the award of costs, NRS 18.005(5) defines costs in relevant part as "[r]easonable fees of not more than five expert witnesses in an amount of not more than $1,500 for each witness, unless the court allows a larger fee after determining that the circumstances surrounding the expert's testimony were of such necessity as to require the larger fee." Capanna argues that the district court's decision to grant fees for Dr. Yoo and Dr. Cash in excess of $1,500 was not supported by an express and careful analysis of the necessity for the statutory deviation. We disagree.

---

[6]Capanna suggests that the district court lacked authority to separately consider the presentation of evidence for his liability defense and for his damages defense in determining whether there was any credible evidence. We disagree, as this court has instructed district courts to "allocate . . . attorney's fees between the grounded and groundless claims." *Bergmann v. Boyce*, 109 Nev. 670, 676, 856 P.2d 560, 563 (1993), *superseded by statute as stated in In re DISH Network Derivative Litig.*, 133 Nev., Adv. Op. 61, 401 P.3d 1081, 1093 (2017).

Supreme Court
of
Nevada

(O) 1947A

13

The district court found that both doctors were necessary to Orth's case and that the requested fees were justified and reasonable based upon the doctors' roles in the litigation. While the district court could have elaborated on its analysis of the doctors' necessity, *see Frazier v. Drake*, 131 Nev. 632, 650, 357 P.3d 365, 377 (Ct. App. 2015) (directing district courts to support the decision to award excessive expert witness fees with "an express, careful, and preferably written explanation of the court's analysis of factors pertinent to determining the reasonableness of the requested fees" and listing various factors), we find no abuse of discretion by the district court in its granting of expert fees for Dr. Yoo and Dr. Cash in excess of the statutory amount.

*Cross-appeal*

Before trial, Orth asked the district court to declare NRS 42.021 unconstitutional. The district court denied the motion. On appeal, Orth raises the same request, claiming the statute, which allows defendants in medical malpractice cases to introduce evidence of collateral payments the plaintiff received from third parties, violates the equal protection clauses of the United States and Nevada Constitutions and is unconstitutionally vague. We decline to consider his argument because he is not an aggrieved party and therefore lacks standing to appeal from the final judgment. *See Las Vegas Police Protective Ass'n Metro, Inc. v. Eighth Judicial Dist. Court*, 122 Nev. 230, 239-40, 130 P.3d 182, 189 (2006) ("Under NRAP 3A(a), . . . only aggrieved parties may appeal [and] [a] party is aggrieved . . . when either a personal right or right of property is adversely and substantially affected by a district court's ruling." (internal quotation marks omitted)). While Capanna introduced collateral source evidence at trial, the jury awarded Orth the entirety of his requested past medical expenses. Therefore, the collateral source evidence did not diminish Orth's

SUPREME COURT
OF
NEVADA

(O) 1947A

14

recovery and did not affect any personal or property right. And as Orth lacks standing to appeal, and "[w]e do not have constitutional permission to render advisory opinions," *City of N. Las Vegas v. Cluff*, 85 Nev. 200, 201, 452 P.2d 461, 462 (1969) (citing Nev. Const. art. 6, § 4), we dismiss the cross-appeal.

In accordance with the foregoing analyses, we affirm the judgment on the jury verdict and the post-judgment orders related to attorney fees and costs.

_____, J.
Stiglich

We concur:

_____, C.J.
Douglas

_____, J.
Cherry

_____, J.
Gibbons

_____, J.
Pickering

_____, J.
Hardesty

