FGA, INC., DBA INSTANT REPLAY SPORTS PUB & GRILL AND CARMINE'S LITTLE ITALY; MELINO, LTD., DBA CARMINE'S LITTLE ITALY; CARMINE & ANN M. VENTO REVOCABLE TRUST, CARMINE VENTO AND ANN VENTO, TRUSTEES; AND CARMINE VENTO, INDIVIDUALLY AND DBA CARMINE & ANN M. VENTO REVOCABLE FAMILY TRUST, APPELLANTS, *v.* DEBBIE GIGLIO, RESPONDENT.

No. 54187

June 14, 2012                                278 P.3d 490

*Lewis and Roca LLP* and *Joel D. Henriod* and *Daniel F. Polsenberg*, Las Vegas; *Watson Rounds, P.C.*, and *Kelly G. Watson*, Las Vegas, for Appellants.

*Mainor Eglet* and *David T. Wall, Robert T. Eglet*, and *Robert M. Adams*, Las Vegas, for Respondent.

Before DOUGLAS, HARDESTY and PARRAGUIRRE, JJ.

## OPINION

By the Court, DOUGLAS, J.:

In this appeal, we consider whether the "mode of operation" approach to premises liability, under which the plaintiff does not have to prove the defendant's knowledge of a particular hazardous condition if the plaintiff can prove that the nature of the defen-

dant's business tends to create a substantial risk of the type of harm the plaintiff suffered, extends beyond the self-service context. Because the mode of operation approach is premised on the idea that business owners should be held responsible for the risks that their choice to have customers serve themselves creates, we conclude that it does not extend to "sit-down" restaurants. Therefore, the district court abused its discretion by giving a mode of operation instruction in this case. We further conclude that the district court abused its discretion by excluding certain evidence. Therefore, we reverse and remand.

## FACTS

This case involves respondent Debbie Giglio's June 2004 fall at Carmine's Little Italy, a "sit-down" restaurant, where servers attended to the needs of patrons, operated by appellant FGA, Inc. FGA is owned by appellant the Carmine and Ann M. Vento Revocable Trust (the Trust). The Trust is also FGA's landlord. Appellant Carmine Vento is the sole officer of FGA and a trustee of the Trust. Carmine's son, Frank Vento, is the president of FGA and the general manager of Carmine's Little Italy.

On the day of the fall, Giglio was on a date with her future husband, Raymond Schrefel. The two were at the restaurant for 45 minutes to an hour before the fall, during which time they consumed four beers and two glasses of wine. Schrefel later indicated that he thought that he and Giglio consumed two beers each and that he had consumed the two glasses of wine. Giglio was on her way to the restroom when she fell. She claimed to have slipped on a greasy or oily substance. Schrefel did not see the fall but corroborated the fact that there was an oily substance on the floor. However, the managers who assisted Giglio after she fell stated that the floor was clean and that she fell without slipping. Although the restaurant had video surveillance cameras, no video footage of the fall was available because the camera system was inoperable on the night in question.

After the fall, Giglio had an intervertebral disc removed in her neck and two discs removed in her lower back. Giglio required pain medications and extensive physical therapy, resulting in medical damages of over $400,000. Giglio's pain was not alleviated by her surgeries, and she claims that in the future, she will need a spinal stimulator and injections for pain management.

Giglio filed suit in district court against FGA and the Trust (collectively, FGA) alleging negligence and requesting over $3.3 million in damages.

Giglio filed a motion in limine to exclude evidence of her prior and subsequent accidents and injuries because they were not causally related to the injuries sustained in the accident, which the district court granted. During the 11 years prior to her fall, Giglio

had seen several doctors about moderate to severe back pain. Giglio had been taking prescription pain medications consistently from 1997 through 2004, when her fall occurred. These medications were for pain in her upper back. However, Giglio had also been treated for pain in her lower back.

Giglio filed a motion in limine to exclude evidence of her alcohol consumption on the night of the fall, arguing that there was no basis to infer that she was intoxicated when she fell. The district court granted the motion. During trial, FGA attempted to question Schrefel about his alcohol consumption on the night of Giglio's fall. Giglio objected, and the district court sustained the objection.

When the fact that there was no surveillance video of Giglio's fall became an issue at trial, Giglio requested that the district court take judicial notice of Nevada Gaming Regulation 5.160, which requires *nonrestricted* gaming licensees to maintain operable video surveillance equipment.[1] However, FGA had a *restricted* gaming license, so this regulation did not apply to it. The district court took judicial notice of the regulation but did not allow FGA to present certain evidence to clarify that the regulation did not apply to it.

After the close of Giglio's evidence, FGA moved for judgment as a matter of law under NRCP 50(a), arguing that the Trust, as a mere landlord, cannot be held liable for physical harm caused by a dangerous condition on the premises. The motion was denied, and the trial proceeded.

The jury was instructed on alternative theories of negligence. The instructions stated that FGA was negligent if Giglio's slip and fall was caused by a foreign substance on the floor that FGA or one of its employees (1) caused to be on the floor, or (2) had actual or constructive notice of and failed to remedy. The jury was additionally instructed on the "mode of operation" approach to premises liability, in which notice (*i.e.*, of a "food hazard") is established by proof that an injury resulted from a reasonably foreseeable dangerous condition related to the nature of the owner's business, or mode of operation, such as self-service.[2] *Sheehan v.*

---

[1]Frank Vento incorrectly testified that FGA had a nonrestricted gaming license.

[2]Jury instruction 33 read:

Plaintiff does not have to establish Defendants had actual or constructive knowledge of the food hazard and Defendants are negligent for Plaintiff's injuries and harms if:

1. Food, butter or oils are commonly found in Defendants' restaurant;

2. It is continuous or easily foreseeable that food, butter or oil spilled in the area of the restaurant where the Plaintiff fell;

3. Plaintiff slipped and fell on food, butter or oil; and

4. Defendants could have inspected and cleaned the area of the restaurant in a more frequent and competent manner.

*Roche Bros. Supermarkets, Inc.*, 863 N.E.2d 1276, 1283 (Mass. 2007). Over FGA's objection, the district court allowed the instruction.[3]

The jury found that FGA was 51 percent negligent and Giglio was 49 percent at fault. No interrogatories were given to the jury for it to indicate under which theory of liability it found FGA to be negligent. The jury awarded damages of $5,551,435, which the court reduced by 49 percent. The court entered a $3,526,545.19 judgment against FGA, which included costs, attorney fees, and prejudgment interest. FGA timely filed this appeal.

## DISCUSSION

On appeal, FGA argues that (1) the district court abused its discretion by giving a "mode of operation" instruction in a case involving a fall in a sit-down restaurant; (2) the district court abused its discretion by excluding evidence of Giglio's preexisting injuries, evidence of alcohol consumption, and evidence to clarify the applicability of a gaming regulation; and (3) the district court erred by denying the motion for judgment as a matter of law.

We conclude that the district court abused its discretion by giving the mode of operation instruction and by excluding evidence of Schrefel's alcohol consumption and evidence to clarify the applicability of the gaming regulation. However, we find no error in the district court's evidentiary rulings regarding preexisting injuries or Giglio's alcohol consumption. We further conclude that the basis for its denial of the motion for judgment as a matter of law no longer exists. Accordingly, we reverse and remand.

### Mode of operation jury instruction

FGA argues that the district court abused its discretion by giving a "mode of operation" jury instruction. Giglio counters that the instruction was proper. In examining these arguments, we will first address whether they are rendered moot by the general verdict rule. Concluding that they are not, we then consider the applicability of mode of operation liability.

#### The general verdict rule

Giglio asserts that FGA's mode of operation argument is moot because the mode of operation instruction provided merely an alternative basis for liability. Giglio contends that she alternatively argued that the spillage was caused by an employee and that FGA

---

[3]The district court previously excluded FGA's proffered testimony regarding absence of prior falls and the restaurant's cleaning standards and procedures, which would have been relevant to whether FGA could have "inspected and cleaned the area of the restaurant in a more frequent and competent manner."

is liable for the negligent acts of its agents; therefore, the mode of operation argument is rendered superfluous by the general verdict rule, which would require this court to presume that the jury found every issue in Giglio's favor. FGA urges this court to follow the lead of Connecticut courts, which have held that the general verdict rule does not apply where a party raises overlapping factual theories in support of one single claim.[4]

This court has a duty " 'to decide actual controversies by a judgment which can be carried into effect, and not to give opinions upon moot questions or abstract propositions, or to declare principles of law which cannot affect the matter in issue before it.' " *University Sys. v. Nevadans for Sound Gov't*, 120 Nev. 712, 720, 100 P.3d 179, 186 (2004) (quoting *NCAA v. University of Nevada*, 97 56, 57, 624 P.2d 10, 10 (1981)). Here, if the judgment may be upheld under the general verdict rule, this court need not consider FGA's arguments relating to the mode of operation approach because they will have been rendered moot.

The "general verdict rule provides that, if a jury renders a general verdict for one party, and no party requests interrogatories, an appellate court will presume that the jury found every issue in favor of the prevailing party." *Curry v. Burns*, 626 A.2d 719, 721 (Conn. 1993). In *Skender v. Brunsonbuilt Construction & Development Co.*, this court recognized this rule, citing to cases from Connecticut, which have dealt with the general verdict rule in depth and outlined the situations in which the general verdict rule applies. 122 Nev. 1430, 1438, 148 P.3d 710, 716 (2006).

Connecticut courts have further held that the general verdict rule is inapplicable where a jury renders a verdict on a single negligence claim that is premised on multiple *factual* theories. *See Curry*, 626 A.2d at 721; *Green v. H.N.S. Management Co., Inc.*, 881 A.2d 1072, 1076-77 (Conn. App. Ct. 2005). These courts have reasoned that " 'various grounds of negligence alleged are often so interlocked as to make it difficult to consider them separately, and formulating interrogatories to obtain separate findings on the various claims would complicate the work of court, jury and counsel,' " and that it is " 'sounder policy to permit an appellant to take advantage upon appeal of errors affecting one specification

---

[4]FGA alternately argues that, even if the general verdict rule applies, there is no evidence in the record to support a finding that an employee spilled the substance upon which Giglio alleges she slipped and fell. While Giglio failed to properly cite to the record in support of this claim, *see* NRAP 28(e)(1), the record does contain some evidence that the jury could have considered to reach a conclusion that FGA's employees caused any spillage.

of negligence only, even though no interrogatories have been submitted.'" *Green*, 881 A.2d at 1076-77 (quoting *Ziman v. Whitley*, 147 A. 370, 373 (Conn. 1929)).

We now adopt the sound reasoning of the Connecticut courts and clarify that the general verdict rule is inapplicable in cases where overlapping factual theories support a single theory of recovery. Here, although Giglio alleged alternate factual theories of negligent conduct, she raised only one theory of recovery—negligence—and the general verdict rule is not properly applied in situations where a jury renders a verdict on a single negligence claim that is premised on multiple factual theories. This takes into account the fact that, where a general verdict is rendered without interrogatories, there is no way to know on which factual theory the jury based its verdict. We therefore address FGA's mode of operation argument.

### The applicability of a "mode of operation" instruction

FGA argues that the district court abused its discretion by instructing the jury on mode of operation liability because it applies only in the context of a self-service establishment. Giglio argues that mode of operation liability extends beyond the self-service context.

This court reviews a district court's decision to give a jury instruction for an abuse of discretion or judicial error. *Skender*, 122 at 1435, 148 P.3d at 714.

"[A] business owes its patrons a duty to keep the premises in a reasonably safe condition for use." *Sprague v. Lucky Stores, Inc.*, 109 Nev. 247, 250, 849 P.2d 320, 322 (1993). Where a foreign substance causing a slip and fall is made to be on the floor by the business owner or one of its agents, then "liability will lie, as a foreign substance on the floor is usually not consistent with the standard of ordinary care." *Id*. Traditionally, where a foreign substance causing a slip and fall results from "the actions of persons other than the business or its employees, liability will lie only if the business had actual or constructive notice of the condition and failed to remedy it." *Id*. at 250, 849 P.2d at 322-23. However, there is a modern trend toward modifying this traditional approach to premises liability to accommodate newer merchandising techniques, such as the shift that grocery stores have made from clerk-assisted to self-service operations. *Sheehan*, 863 N.E.2d at 1281-82.

One such variation is the "mode of operation" approach. *Id.* at 1282. This approach focuses on the nature of the business at issue. *Id.* at 1282-83.

> [W]here an owner's chosen mode of operation makes it reasonably foreseeable that a dangerous condition will occur, a store owner could be held liable for injuries to an invitee if the plaintiff proves that the store owner failed to take all reasonable precautions necessary to protect invitees from these foreseeable dangerous conditions.

*Id.* at 1283. The rationale underlying the mode of operation approach is that an owner of a self-service establishment has, as a cost-saving measure, chosen to have his customers perform tasks that were traditionally performed by employees. *Ciminski v. Finn Corporation, Inc.*, 537 P.2d 850, 853 (Wash. Ct. App. 1975). If a customer who is performing such a task negligently creates a hazardous condition, the owner is "charged with the creation of this condition just as he would be charged with the responsibility for negligent acts of his employees" because it was the owner's choice of mode of operation that created the risk. *Id.*

Under the mode of operation approach, "the plaintiff's burden to prove notice is not eliminated. Instead, the plaintiff satisfies the notice requirement if he establishes that an injury was attributable to a reasonably foreseeable dangerous condition on the owner's premises that is related to the owner's self-service mode of operation." *Sheehan*, 863 N.E.2d at 1283. There is a strong modern trend toward recognizing some form of a mode of operation rule, although most jurisdictions have applied it narrowly. *See Fisher v. Big Y Foods, Inc.*, 3 A.3d 919, 928 n.21 (2010) (noting that 22 jurisdictions have adopted some variation of the mode of operation rule, and that the majority of the jurisdictions adopting it have applied it narrowly).

In *Sprague v. Lucky Stores, Inc.*, this court implicitly adopted the mode of operation approach[5] in reversing an order granting

[5]Some jurisdictions have declined to adopt the mode of operation approach, suggesting that it imposes strict liability on business owners, making them "absolute insurers" for the safety of their customers. *Sheehan*, 863 N.E.2d at 1285. They instead apply the "recurrent risk" approach, where "[i]f the owner of the premises has taken precautions reasonably necessary to protect its customers, then the owner is not liable to customers injured on the premises." *Dumont v. Shaw's Supermarkets, Inc.*, 664 A.2d 846, 849 n.1 (Me. 1995).

Nevada has not explicitly adopted either approach. Based on *Sprague*, some categorize it among the states that apply the recurrent risk approach, while others treat it as a mode of operation jurisdiction. *See Sheehan*, 863

summary judgment in favor of Lucky. 109 Nev. at 251, 849 P.2d at 323. There, the plaintiff slipped and fell on a smashed grape left on the floor of the produce department in a Lucky grocery store. *Id.* at 249, 849 P.2d at 322. The plaintiff offered no evidence indicating that Lucky was responsible for the grape's presence on the floor or that it had actual knowledge of the grape's presence on the floor; therefore, under the traditional approach to premises liability, the plaintiff was required to prove that Lucky had constructive notice of the grape's presence on the floor in its produce department. *Id.* at 250, 849 P.2d at 323. This court stated that even in the absence of constructive notice, "a jury could conclude that Lucky should have recognized the impossibility of keeping the produce section clean by sweeping" alone. *Id.* at 251, 849 P.2d at 323. Further, this court stated that sufficient evidence was presented "to justify a reasonable jury in concluding that Lucky was negligent in not taking further precautions, besides sweeping, to diminish the chronic hazard posed by the produce department floor." *Id.* However, *Sprague* dealt with a self-service produce section in a supermarket; therefore, the court did not address whether such an analysis would extend beyond the self-service context.

Keeping the rationale underlying the mode of operation approach in mind, we hold that mode of operation liability does not generally extend to a sit-down restaurant such as Carmine's Little Italy. Respondent failed to show that the handling of food in a particular area by employees of Carmine's Little Italy gave rise to a foreseeable risk of a regularly occurring hazardous condition for its customers similar to the condition that caused the injury. We find no reason to extend mode of operation liability to such establishments absent such a showing as their owners have not created the increased risk of a potentially hazardous condition by having their customers perform tasks that are traditionally carried out by employees. Accordingly, we conclude that the district court abused its discretion by giving a mode of operation instruction.[6]

### Evidentiary rulings

FGA argues that the district court erred by excluding evidence of Giglio's preexisting injuries, evidence of Giglio's alcohol con-

---

N.E.2d at 1285; *Kelly v. Stop and Shop, Inc.*, 918 A.2d 249, 258-59 (Conn. 2007). However, while they may have different labels, both the "recurrent risk" and "mode of operation" approaches involve essentially the same analysis: to determine whether owners are liable to injured patrons by analyzing whether there was a "recurrent" or "continuous" risk on the premises associated with a chosen mode of operation. *Sheehan*, 863 N.E.2d at 1285.

[6]The parties make further arguments regarding the proper application of mode of operation liability; however, because we conclude that mode of operation liability does not apply here, we need not address these arguments.

sumption, and the potential applicability of gaming regulations to FGA. The district court did not abuse its discretion with respect to Giglio's preexisting injuries and alcohol consumption, but we agree with FGA as to the evidence clarifying the applicability of the gaming regulations.

We review a district court's evidentiary rulings for an abuse of discretion. *M.C. Multi-Family Dev. v. Crestdale Assocs.*, 124 Nev. 901, 913, 193 P.3d 536, 544 (2008). All relevant evidence is admissible at trial unless otherwise excluded by law or the rules of evidence. NRS 48.025. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." NRS 48.015. Relevant evidence may be excluded if, among other things, its "probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues or of misleading the jury." NRS 48.035(1).

### Preexisting back condition

FGA argues that the district court abused its discretion in excluding evidence of Giglio's preexisting back condition. It claims that this evidence was relevant to its arguments regarding causation and damages. Specifically, FGA contends that it may attack Giglio's theory of causation without affirmatively proving an alternative. Giglio counters that the district court properly excluded evidence of her preexisting back condition because FGA's experts did not meet Nevada's certainty requirement for expert opinion testimony.

A prior injury or preexisting condition may be relevant to the issues of causation and damages in a personal injury action. *Voykin v. Estate of DeBoer*, 733 N.E.2d 1275, 1279-80 (Ill. 2000); *see also Prichard v. Veterans Cab Company*, 408 P.2d 360, 364 (Cal. 1965).

In order for evidence of a prior injury or preexisting condition to be admissible, a defendant must present by competent evidence a causal connection between the prior injury and the injury at issue. *McCormack v. Andres*, 185 P.3d 973, 977 (Mont. 2008) ("The party seeking to introduce alternate causation evidence must demonstrate a causal connection between the present symptoms complained of and a prior accident."); *Voykin*, 733 N.E.2d at 1279-80 ("[F]or a prior injury to be relevant to causation, the injury must make it less likely that the defendant's actions caused any of the plaintiff's injuries or an identifiable portion thereof.");

*Allendorf v. Kaiserman Enterprises*, 630 A.2d 402, 407 (N.J. 1993) ("A party seeking to present evidence of a prior injury or condition relating to an issue of medical causation must show that the evidence has some 'logical relationship to the issue in the case.'") Moreover, unless it is readily apparent to a layperson, a defendant seeking to introduce evidence of a prior injury generally must produce expert testimony demonstrating the relationship between the prior injury and the injury complained of, and why it is relevant to a fact of consequence. *Voykin*, 733 N.E.2d at 1280.

The test for competency of medical expert testimony depends on the purpose for which the testimony is offered. *Williams v. Dist. Ct.*, 127 Nev. 518, 530, 262 P.3d 360, 368 (2011). If medical expert testimony is offered to establish causation, it "must be stated to a reasonable degree of medical probability." *Id.* However, if expert testimony is offered to contradict the party opponent's expert testimony, the offered testimony must only be "competent and supported by relevant evidence or research." *Id.* However, for defense expert testimony to constitute a contradiction of the party opponent's expert testimony, the defense expert must include the plaintiff's causation theory in his analysis. *Id.*

> If the defense expert does not consider the plaintiff's theory of causation at all, then the defense expert must state any independent alternative causes to a reasonable degree of medical probability because he or she then bears the burden of establishing the causative fact for the trier of fact. Otherwise, the testimony would be "incompetent not only because it lacks the degree of probability necessary for admissibility but also because it does nothing to controvert the evidence of appellants."

*Id.* (quoting *Stinson v. England*, 633 N.E.2d 532, 538 (Ohio 1994)).

Here, the district court excluded all references to Giglio's preexisting back condition because it concluded that Giglio's prior injuries were "remote in time" and/or involved body parts that were "unrelated" to the injuries at issue. A review of the record shows that FGA proffered expert testimony that indicated that some or all of the treatment Giglio received after her fall could be attributed to her preexisting condition; however, none of the experts were able to testify to a reasonable degree of medical probability that her preexisting condition caused the injuries at hand. Because this testimony was proffered to establish causation, it

failed to meet the appropriate standard. Accordingly, we conclude that the district court did not abuse its discretion in excluding evidence of Giglio's prior back condition.

### Alcohol consumption

FGA argues that the district court erred by excluding evidence that Giglio and Schrefel consumed alcohol prior to Giglio's fall. Giglio contends that the district court properly excluded the evidence because of lack of foundation, danger of confusion, misleading the jury, and the interjection of collateral issues.

Evidence of a party's possible intoxication may be probative of the issues of causation and comparative negligence. *See VanHercke v. Eastvold*, 405 N.W.2d 902, 906 (Minn. App. 1987). Evidence of intoxication, however, should not be admitted if there is no support for finding a causal link between the alleged impairment and the injury. *Holderer v. Aetna Cas. and Sur. Co.*, 114 Nev. 845, 852-53, 963 P.2d 459, 464 (1998). In addition to causation, evidence of intoxication is also relevant to a person's ability to perceive and, thus, may be "admissible to attack a witness on [his or] her ability to perceive and remember." *See State v. Orantez*, 902 P.2d 824, 828 (Ariz. 1995).

In this case, the parties offered conflicting testimony as to whether Giglio's fall could have been caused by intoxication. FGA offered testimony that one witness who interacted with Giglio observed that he smelled alcohol on her breath and that she had slurred speech. Schrefel, Giglio's key witness, testified that Giglio had two beers within 45 minutes of the fall. However, there is no indication that Giglio showed any signs of intoxication in the accident report filled out at the time of the accident or in the medical records from when Giglio was taken to the hospital after the fall.

The transcript of the motion in limine hearing shows that the district court concluded that there was insufficient evidence to show that Giglio was intoxicated. In particular, the court noted that if there was an issue of intoxication, it would have been reported by the emergency medical team that responded. We detect no abuse of discretion in the district court's decision to exclude evidence of Giglio's alcohol consumption.

However, we conclude that the district court abused its discretion by excluding evidence that Giglio's key witness, Schrefel, consumed alcohol. Evidence regarding Schrefel's alcohol consumption is relevant to his ability to perceive whether there was a foreign

substance on the floor. Additionally, we can see no prejudice that would result from allowing evidence that a man of legal drinking age had consumed alcohol. Accordingly, evidence of Schrefel's alcohol consumption should be admitted at any new trial to assist the jury in determining whether Schrefel was a reliable eyewitness.

### Nevada Gaming Regulation 5.160

FGA argues that the district court erred by taking judicial notice of Nevada Gaming Regulation 5.160, which requires those establishments with a nonrestricted gaming license to have operational surveillance cameras. FGA further argues that the district court abused its discretion by permitting Giglio to present evidence of the regulation while not permitting FGA to present rebuttal evidence that the regulation did not apply to it because it only held a restricted gaming license. Giglio contends that FGA failed to object on the grounds it now asserts on appeal and that FGA was permitted to testify that it held a restricted license and was not subject to the regulation and, therefore, any error was harmless.

The nature and extent that a party may present evidence to correct or change testimony rests largely in the discretion of the district court. *See Turtenwald v. Aetna Casualty & Surety Co.*, 201 N.W.2d 1, 8 (Wis. 1972). However, the legal system has an interest in seeking the truth and encourages the correction of erroneous statements on the part of a witness. *See Ex parte Keizo Shibata*, 35 F.2d 636, 637-38 (9th Cir. 1929).

Here, Giglio requested that the district court take judicial notice of Nevada Gaming Regulation 5.160, which requires nonrestricted gaming licensees to maintain operable video surveillance. Prior to Giglio's request, Frank Vento, testifying as the person most knowledgeable for FGA, stated that FGA held a nonrestricted gaming license. The district court properly took judicial notice of Nevada Gaming Regulation 5.160. *See* NRS 47.140; NRS 47.150. However, after the district court took judicial notice of the gaming regulation, FGA informed the court that Frank Vento's testimony regarding whether FGA held a restricted or nonrestricted gaming license was incorrect. FGA offered both the testimony of the attorney who represented FGA before the Gaming Control Board and a fax from the Gaming Control Board indicating that the license in question was a restricted gaming license. The district court excluded the evidence and only allowed Carmine Vento, one of the holders of the license, to testify that the license was a restricted license. The court then permitted Giglio to argue that FGA's witnesses lacked credibility because they contradicted each

other and that there was no way to know what type of license FGA possesses because it was never produced.[7]

In light of the incorrect statements that FGA had a nonrestricted license, the fact that a nonrestricted licensee is required to have a functioning video surveillance system on the premises, and the subsequent arguments made by Giglio, we conclude that the district court abused its discretion in excluding this evidence. *See* NRS 48.025.

*Denial of motion for judgment as a matter of law for appellant Carmine Vento and Ann M. Vento Revocable Family Trust*

FGA argues that the district court erred by denying its motion for judgment as a matter of law as to the Trust because a mere landlord cannot be held liable for physical harm caused by a dangerous condition on the premises. Giglio counters that the district court properly denied the Trust's motion for a judgment as a matter of law because its trustee, Carmine Vento, was also an operator of the restaurant and involved in deciding how the operation was set up, and mode of operation was one basis for liability. Giglio further argues that the Trust acted as more than a mere landlord. Giglio points out that Vento testified that the Trust held the gaming license for Carmine's Little Italy to permit the Trust to continue operating the business if something happened to him and that all of the income from the restaurant went to the Trust.

FGA replies that the mode of operation theory cannot support liability for the Trust and the only support in the record for Giglio's argument that the Trust is more than a landlord is the trial testimony that the Trust's name was also listed on Carmine's gaming license.

This court reviews a district court's denial of a motion for judgment as a matter of law de novo. *Nelson v. Heer*, 123 Nev. 217, 223, 163 P.3d 420, 424-25 (2007). A motion for judgment as a

---

[7]Giglio's counsel argued:

> Remember I asked, [Frank Vento], well are you as certain of that as you are of your testimony . . . a few days ago when you said he asked you three times does your company have a non-restricted gaming license or a restricted gaming license?
> A. That is a non-restricted proper gaming license.
> Q. Non-restricted property?
> Yeah, non-restricted license.
> Q. This is a non-restricted license?
> Yes.
> Not once, not twice, three times he testifies that way.
> And then Carmine, just like with everything else, comes in and testifies inconsistently. Oh, no it's a restricted license.
> How do we know what it is? We don't know what it is. Nobody produced the license.

matter of law may be granted if the opposing party " 'failed to prove a sufficient issue for the jury,' so that [the] claim cannot be maintained under the controlling law." *Id.* at 222, 163 P.3d at 424 (quoting NRCP 50(a)(1)). The court must view all evidence and inferences in favor of the nonmoving party. *Id.*

A landlord is not liable for injury caused by the negligent actions of its tenant. *Wright v. Schum*, 105 Nev. 611, 612-13, 781 P.2d 1142, 1142-43 (1989). However, a landlord is still subject to the duty of all persons to "exercise reasonable care not to subject others to an unreasonable risk of harm." *Id.* at 614, 781 P.2d at 1143 (quotations omitted).

In *Wright*, the plaintiff was mauled by a pit bull and sued the landlord and owner of the premises from which the dog had escaped. *Id.* at 612, 781 P.2d at 1142. The landlord had previously received complaints from neighbors about the dog's aggressiveness and had assured them that he would take care of the problem by asking his tenants to get rid of the dog or move out of the house. *Id.* at 614-15, 781 P.2d at 1143-44. However, he allowed the tenants to stay and keep the dog because they promised to keep the dog in the house or chained in the yard. *Id.* at 615, 781 P.2d at 1144. This court held that while the landlord was not liable because of his status as a landlord, there was a material issue of fact as to whether he was liable as an individual because he voluntarily undertook to discharge part of the dog owner's duty to the general public to prevent the dog from leaving the leased premises and harming others. *Id.* at 613-18, 781 P.2d at 1143-46. Here, like the landlord in *Wright*, the Trust is potentially liable not based on its status as a landlord, but rather based on its own actions.

In denying FGA's motion for a judgment as a matter of law, the district court stated that it was the jury's "decision to make a determination as to whether or not the way [the restaurant] was set up from the mode of operation standpoint resulted in a potentially hazardous condition that the property owner and the business owner or the FGA is responsible for." Because we now hold that the mode of operation approach does not apply in the sit-down restaurant context, any jury will not be instructed on this approach. Thus, the basis for the district court's ruling is no longer present in this case. Therefore, the district court must determine whether Giglio presented sufficient evidence for the jury to find the Trust liable based on its own conduct.[8]

[8]We note that although the Trust is potentially liable based on its own actions, it may still benefit from the argument raised by FGA that it was not allowed to provide evidence of the lack of prior slip and falls. This evidence is relevant to the issue of whether the Trust voluntarily undertook to discharge part of FGA's duty to maintain safe premises.

Accordingly, we vacate the district court's order denying judgment as a matter of law and reverse the district court's judgment. We remand this matter to the district court for a new decision on the motion for judgment as a matter of law and for further proceedings in light of this opinion.[9]

HARDESTY and PARRAGUIRRE, JJ., concur.

---

[9]FGA argues that on remand, the matter should be assigned to a different judge because it appears that the district court judge prejudged the issues in the case. However, in light of FGA's failure to cite to any specific instances of judicial misconduct, we conclude that reassignment is not warranted. *See In re AMERCO Derivative Litigation*, 127 Nev. 196, 229 n.13, 252 P.3d 681, 704 n.13 (2011) (denying a similar unsubstantiated request that a matter be assigned to a different judge upon remand because the district court "prejudged" the case).

Additionally, because we conclude that there was reversible error, we need not address FGA's cumulative-error argument.