138 Nev., Advance Opinion 42

IN THE SUPREME COURT OF THE STATE OF NEVADA

DESIRE EVANS-WAIAU,
INDIVIDUALLY; AND GUADALUPE
PARRA-MENDEZ, INDIVIDUALLY,
Appellants,
vs.
BABYLYN TATE, INDIVIDUALLY,
Respondent.

No. 79424

FILED

JUN 16 2022


ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
DEPUTY CLERK

Appeal from a district court defense judgment on a jury verdict in a tort action. Eighth Judicial District Court, Clark County; Mary Kay Holthus, Judge.

*Affirmed.*

Prince Law Group and Dennis M. Prince and Kevin T. Strong, Las Vegas, for Appellants.

Lewis Roca Rothgerber Christie LLP and Daniel F. Polsenberg, Joel D. Henriod, and Adrienne Brantley-Lomeli, Las Vegas; Winner Booze & Zarcone and Thomas E. Winner and Caitlin J. Lorelli, Las Vegas, for Respondent.

BEFORE THE SUPREME COURT, EN BANC.

*OPINION*

By the Court, CADISH, J.:

This appeal presents two separate questions—one procedural and one substantive. The procedural question is whether a party must move for a new trial in district court to preserve attorney-misconduct claims

22-19123

on appeal. We recently held in *Rives v. Farris*, 138 Nev., Adv. Op. 17, 506 P.3d 1064 (2022), that a party is not necessarily required to move for a new trial to preserve its trial error-based arguments or ability to seek a new trial as an appellate remedy. Respondents argue, however, that our decision in *Lioce v. Cohen*, 124 Nev. 1, 174 P.3d 970 (2008), requires a party to move for a new trial to preserve a specific claim that attorney misconduct warrants a new trial. Respondents read too much into *Lioce* and ignore the procedural posture of that case, for there we were concerned only with whether the complaining parties preserved their attorney misconduct arguments with contemporaneous objections. Although *Lioce* arose from orders resolving motions for new trials, that distinct procedural posture does not encumber our review in the context of an appeal from a final judgment where appellants objected to at least some of the alleged misconduct. Thus, the rule announced in *Rives* applies. As no procedural shortcomings inhibit us from reaching the substantive merits of the appeal, notably the alleged attorney misconduct, we address appellants' claims of error, and having reviewed the record, we are not persuaded that the challenged conduct or other alleged trial errors warrant reversal. Accordingly, we affirm the district court's judgment.

## *FACTS AND PROCEDURAL HISTORY*

In October 2015, appellant Desire Evans-Waiau was driving westbound on Flamingo Boulevard. She was accompanied by appellant Guadalupe Parra-Mendez, as well as several children who are not parties to this appeal. According to Evans-Waiau, she abruptly stopped to avoid a pedestrian in the crosswalk at the intersection of Flamingo and Linq Lane. Respondent Babylyn Tate was driving westbound on Flamingo Boulevard behind Evans-Waiau. According to Tate, Evans-Waiau "braked hard and abruptly" but Tate did not see a turn signal or a brake light. She testified

that she rear-ended Evans-Waiau's car despite braking and swerving to the left to try and avoid a collision. No one reported any injuries at the scene. Evans-Waiau reported the accident to the police, who responded approximately two hours later. After several months passed, during which appellants obtained medical treatment, appellants filed a complaint, alleging that Tate negligently operated her car and caused appellants injury.[1] Tate answered, asserting that Evans-Waiau was comparatively negligent as an affirmative defense and that appellants could not otherwise prove that their medical treatment was causally related to the October accident.

At trial, appellants called Jorge Parra-Meza, who is Evans-Waiau's significant other and Parra-Mendez's brother, as a witness. Parra-Meza owns the vehicle that Evans-Waiau was driving when the accident occurred, and he is the father of the children who were in the vehicle with Evans-Waiau. During his testimony, which primarily focused on Evans-Waiau's injury claims, Parra-Meza stated he had "smoked-out" taillight covers installed on the vehicle after he purchased it. During cross-examination, he affirmed that the vehicle had been rear-ended twice, including this accident, after he added the smoked-out taillights.

Tate introduced an audio/video recording that Parra-Meza made the night of the accident. In the video, Parra-Meza addressed the damage to the vehicle and stated:

> You can see the fuckin' bumper is fuckin' totaled.
> Look at the shape of this fuckin' big ass dent right
> here, too. The lights are obviously out. Light's
> fuckin' out here. I don't know how the fuck this

---

[1]At some point during her treatment, Evans-Waiau was involved in another car accident, and an ambulance transported her to the hospital. Evans-Waiau underwent spinal surgery after the second accident.

happened but look, a big ass dent here, a big ass dent here. Fuck.

Appellants objected to its admission as irrelevant hearsay. They also argued that even if it had potential relevancy, it should be excluded because Parra-Meza's use of profanity carried a potential for unfair prejudice that outweighed any probative value the recording may have. The district court concluded that the recording was relevant to the bias of both Parra-Meza and Evans-Waiau because no one reported an injury from the crash until after Parra-Meza made the recording while he wondered who was going to pay for the damage from the wreck. The court concluded the recording was not hearsay because it was not offered for the truth of the matter asserted and that the profanity was not prejudicial, as the jury would likely understand Parra-Meza's frustration with the damage to his vehicle. The court thus allowed Tate to play the video. On questioning, Parra-Meza confirmed that his children were in the background when he made the video. He also confirmed that he was angry and wondered who would pay for the damage to the vehicle when he made the video.

The district court also allowed Tate to ask appellants' medical providers questions "regarding the existence of any past working relationship with [appellants'] counsel involving medical liens only." During trial, Evans-Waiau confirmed that she met with her initial attorney, Paul Powell, before meeting with any doctors, and that Powell referred her to a chiropractor. Powell also referred Evans-Waiau to Dr. Garber, who performed spinal surgery on Evans-Waiau.

Regarding medical liens, Dr. Rosler, a pain management physician, performed a selective nerve block on Evans-Waiau. He referred her to Dr. Khavkin, a neurosurgeon, for a neurosurgical evaluation, which

showed a structural disc injury. Dr. Khavkin recommended Evans-Waiau undergo a spinal fusion, which Dr. Garber affirmed when Evans-Waiau visited him for a second opinion.[2] Dr. Rosler billed several thousand dollars, but he treated Evans-Waiau on a medical lien "on any potential settlement" she received. Dr. Khavkin also treated Evans-Waiau on a medical lien.

Tate called Dr. Schifini, a board-certified anesthesiologist, as a witness. He reviewed all available medical records, imaging studies, deposition testimony, accident-related data, and a video. He did not form an opinion on whether the accident caused injuries to either Parra-Mendez or Evans-Waiau because "[t]here was no objective evidence . . . to indicate that there was any injury in this particular case." Instead, he gave appellants "the benefit of the doubt" and "assume[d]" that they were injured in the manner described. Based on that assumption, he addressed whether the treatments appellants received were reasonable and necessary.

Appellants moved to strike Dr. Schifini's testimony, arguing that it could not help the jury because he did not opine on whether appellants were injured in the crash. Further, they asserted that his testimony was not proper under *Williams v. Eighth Judicial District Court*, 127 Nev. 518, 262 P.3d 360 (2011), because it did not consider their theory of causation. The district court denied the motion, concluding that Dr. Schifini's testimony satisfied *Williams* because he "assume[d] that [Evans-Waiau] had an injury," yet concluded that it was resolved and likely not caused by the accident. The court also pointed out that appellants failed to

---

[2]While Dr. Rosler testified that he referred Evans-Waiau to Dr. Garber for a second opinion regarding the necessity of spinal surgery, Evans-Waiau testified that Powell referred her to Dr. Garber, and on her patient intake form, Evans-Waiau indicated that she learned of Garber's practice from Powell.

contemporaneously object to the testimony, and thus, in the absence of clear error, appellants' motion to strike failed.

Before closing arguments, the district court provided two jury instructions related to Evans-Waiau's potential comparative negligence. First, the district court gave Instruction No. 34, which provided,

> A person shall not drive, move, stop or park any vehicle . . . if such vehicle . . . [i]s not equipped with lamps, reflectors, brakes, horn and other warning and signaling devices . . . required by the laws of this State . . . under the conditions and for the purposes provided in such laws.

Next, the court gave Instruction No. 35, which provided that under Nevada law, "[e]very motor vehicle must be equipped with two tail lamps mounted on the rear, which, when lighted, emit a red light plainly visible from a distance of 500 feet to the rear." The instruction continued that if the jury concluded a party violated that law, "it is your duty to find such violation to be negligence, and you should then consider the issue of whether that negligence was the proximate cause of injury or damage to the plaintiff."

During closing argument, Tate's attorney discussed "the value of the dollar" as it relates to appellants' requested damages. He argued as follows:

> The value of the dollar outside the courtroom is this, if the average family of four makes $50,000 a year, if the average family of four saves $50,000 a year makes $50,000 a year [sic] and let's pretend that family never had to pay a mortgage, never had to pay rent, never had to buy groceries, never ever [sic] to pay for a barber, never had to hail a cab, never went to the movies, never went to a restaurant, never paid a bill. It would take that family that makes $50,000 a year, if they never paid for any clothing, they never paid for children's clothing, never paid for schoolbooks, they never made a car payment, they never paid for gas, they

never paid for electricity, it would save [sic] that family of four 20 years to save $1 million.

Appellants objected on the basis that the argument improperly suggested that the jury consider Tate's ability to pay any potential judgment, as the clear inference of such an argument was that Tate would not be able to pay appellants' projected damages. The district court sustained the objection as it assumed facts not in evidence but allowed Tate to make a hypothetical argument of how long it would take a family to save the requested damages "[t]o put it in perspective on some level how much money it is."

Following the ruling, Tate argued:

If that average family of four managed at the end of the year to have $5,000 more in the bank than they have the previous year, they'd be doing—that's better than most of us. That's $5,000 at the end of the year that they didn't have the previous year. A lot of people aren't able to do that.

And if that family was able to save $5,000 a year, how long would it take them to save $1 million? It would take them 200 years to save a million dollars. That's how much money they're asking for. 200 years. A million dollars. That's 1/3 of one element of one of the damages they're claiming in this case.

It would take them 600 years to save $3 million. That's not Monopoly money they're asking for. They're asking for real money. Real money.

Appellants did not object to this argument. The jury returned a general verdict finding Tate not negligent, and the district court entered judgment on the verdict. The court of appeals affirmed, and we granted review.

## DISCUSSION

*Appellants did not waive their attorney-misconduct claims by not moving for a new trial in district court*

Tate argues that appellants waived their attorney-misconduct claims because they did not move for a new trial before filing this appeal.

Relying on *Lioce v. Cohen*, 124 Nev. 1, 18, 174 P.3d 970, 981 (2008), Tate contends that a motion for a new trial is required in the attorney-misconduct realm because the district court "must evaluate the evidence and the parties' and the attorneys' demeanor to determine whether a party's substantial rights were affected" by the alleged attorney misconduct. *Lioce*, 124 Nev. at 18, 174 P.3d at 981. We disagree.

We recently addressed whether a party must move for a new trial to raise a preserved issue on appeal in *Rives*, 138 Nev., Adv. Op. 17, 506 P.3d at 1068, and held that "a party need not file a motion for a new trial to raise a preserved issue on appeal or request a new trial as a remedy for alleged errors below." This general rule applies regardless of the alleged trial error, and *Lioce* does not require that a party move for a new trial before pursuing an appeal pertaining specifically to alleged attorney misconduct relating to improper arguments.[3] *Lioce* happened to arise from the post-trial motion process, but that procedural posture does not work as an encumbrance to appellate review, such that a party who timely objected to the alleged misconduct but did not move for a new trial cannot appeal from the final judgment on the basis that the unchecked misconduct resulted in an unfair trial.

In *Lioce*, we addressed "the issue of which standards district courts are to apply *when deciding motions for a new trial* based on attorney misconduct." 124 Nev. at 14, 174 P.3d at 978 (emphasis added). However,

---

[3]As we noted in *Rives*, while a party need not move for a new trial before pursuing an appeal, there are several practical benefits to doing so such as allowing a district court to correct alleged errors without pursuing potentially unnecessary appellate litigation or developing a better record for potential appellate review by allowing the district court to articulate its reasoning for its rulings and the parties to "crystallize" their arguments. 506 P.3d at 1069 n.3.

we framed the issue that way because the underlying appeals were taken from orders granting or denying motions for a new trial based on alleged attorney misconduct. *Id.* at 8, 10-11, 14, 174 P.3d at 975, 976-77, 978. Thus, *Lioce* arose from the post-trial motion process, and thus, we addressed the applicable standards for such motions, but we did not impose a requirement that a party *must* move for a new trial based on alleged attorney misconduct to preserve that issue for appeal.[4] While Tate raises several prudential arguments that district courts are best situated to make factual findings and appellate review may be enhanced if a party first seeks a new trial in district court, such concerns do not warrant creating a requirement that a party move for a new trial as a prerequisite to raising preserved issues on appeal when the rules do not contain such a requirement.[5] Accordingly, we conclude that a party need not move for a new trial as a prerequisite for preserving its attorney-misconduct claims for appeal when that party

---

[4]Our prior caselaw does not require a contrary result. First, in *BMW v. Roth*, we reversed a decision to grant a new trial as to one of the plaintiffs because that plaintiff never moved for a new trial or joined the other plaintiff's motion for a new trial, and thus, there was no basis for the district court to grant that plaintiff a new trial. 127 Nev. 122, 132 n.4, 252 P.3d 649, 656 n.4 (2011). Second, in *Bato v. Pileggi*, we concluded that the appellant's failure to *either* contemporaneously object to the attorney misconduct *or* move for a new trial based on attorney misconduct constituted waiver of the claims. No. 68095, 2017 WL 1397327, at *1 (Nev. Apr. 14, 2017). Finally, in *Craig v. Harrah*, we noted that we had not previously held that a party must move for a new trial to preserve an issue for appellate review and concluded that "it is not necessary to so hold in the instant case, or to pass, now, finally upon that question." 65 Nev. 294, 308, 195 P.2d 688, 694 (1948).

[5]*Rives* squarely forecloses Tate's argument that NRAP 3A(a) goes to jurisdiction only, not issue preservation. 138 Nev., Adv. Op. 17, 506 P.3d at 1068.

objected to the misconduct in district court. As appellants raised objections to the conduct they challenge on appeal, we next address their arguments that such misconduct, along with other alleged trial errors, warrants reversal.

*Tate did not make an improper ability-to-pay argument*

Appellants contend that Tate made an improper ability-to-pay argument in closing that constituted reversible attorney misconduct because it focused on how many years it would take a family to save enough money to cover the requested damages. They also argue that Tate's attorney's comments improperly encouraged jury nullification and that her attorney made an improper golden-rule argument. We disagree.

We review whether an attorney's comments constitute misconduct de novo. *Lioce*, 124 Nev. at 20, 174 P.3d at 982. "A defendant's ability or inability to pay a judgment is no more relevant to the issue of liability than is the fact of insurance." *White v. Piles*, 589 S.W.2d 220, 222 (Ky. Ct. App. 1979). "[T]he ability of a defendant to pay the necessary damages injects into the damage determination a foreign, diverting, and distracting issue which may effectuate a prejudicial result." *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).

All the cases on which appellants rely focus on whether the defendant explicitly mentioned or asked the jury to consider the defendant's lack of wealth or inability to pay any judgment, which Tate did not do here. *See, e.g., id.* (concluding that the district court erred when it considered the defendant's inability to pay a substantial monetary judgment when fashioning a judgment). Instead, Tate's attorney merely discussed the value of a dollar and "[told] the jury to determine what amount of money" would compensate appellants and "what that money means to them." *A.C. ex rel. Cooper v. Bellingham Sch. Dist.*, 105 P.3d 400, 407 (Wash. Ct. App. 2004).

SUPREME COURT
OF
NEVADA

(O) 1947A

This argument did not ask the jury to reject appellants' claims based on Tate's inability to pay a judgment and did not even discuss Tate's financial circumstances. Accordingly, while such an argument would be improper, Tate did not make an ability-to-pay argument here.

Although appellants contend that this argument also improperly encouraged jury nullification, Tate's attorney "did not implore the jury to disregard the evidence." *Capanna v. Orth*, 134 Nev. 888, 891, 432 P.3d 726, 731 (2018). Jury nullification is the "knowing and deliberate rejection of the evidence or refusal to apply the law either because the jury wants to send a message about some social issue . . . or because the result dictated by law is contrary to the jury's sense of justice, morality, or fairness." *Lioce*, 124 Nev. at 20, 174 P.3d at 982-83 (quoting *Jury Nullification, Black's Law Dictionary* (8th ed. 2004)). The argument here, as reframed, provided a hypothetical as context for the damages amount appellants sought, and Tate ultimately argued that evidence did not support negligence or the necessary element of causation; this does not amount to an improper jury-nullification argument. *Cf. Capanna*, 134 Nev. at 890-91, 432 P.3d at 731 (rejecting argument that defendant's counsel advocated for jury nullification, as the record showed that, in context, counsel "merely argued the role of the jury in the deliberative process," and to the extent counsel asked the jury to send a message, the argument was not prohibited because counsel did not ask the jury to ignore the evidence).

As to whether the argument constituted an impermissible golden-rule argument, appellants focus particularly on Tate's statement that if a family was able to save $5,000, "they'd be doing—that's better than most of us." But appellants did not object to this revised closing argument as an improper golden-rule argument, and thus, waiver applies. *See Lioce*, 124 Nev. at 19, 174 P.3d at 981 (holding that a "party must object to



purportedly improper argument to preserve this issue for appeal" and explaining that the issue is "generally deem[ed]" waived if the party fails to object to it). While appellants objected to the initial hypothetical, they objected only on the ground that it was an impermissible ability-to-pay argument. They did not make a golden-rule objection, despite that a golden-rule objection is distinct from an ability-to-pay objection. *Compare Lioce*, 124 Nev. at 22, 174 P.3d at 984 (explaining that a golden-rule argument "is an argument asking jurors to place themselves in the position of one of the parties"), *with Geddes*, 559 F.2d at 560 ("[T]he ability of a defendant to pay the necessary damages injects into the damage determination a foreign, diverting, and distracting issue which may effectuate a prejudicial result.").

While a party must object to an improper attorney argument to preserve the issue for appeal, when a party fails to object, we may still review allegations of such misconduct for plain error. *Lioce*, 124 Nev. at 19, 174 P.3d at 981-82. To succeed on plain-error review of unobjected-to attorney misconduct, a party must show "that no other reasonable explanation for the verdict exists." *Id.* at 19, 174 P.3d at 982 (quoting *Ringle v. Bruton*, 120 Nev. 82, 96, 86 P.3d 1032, 1041 (2004)). Here, assuming that Tate's attorney made an improper golden-rule argument by stating that a family able to save $5,000 would be doing better "than most of us," that statement does not offset the evidence supporting the jury's verdict. *See id.* ("This standard addresses the rare circumstance in which the attorney misconduct offsets the evidence adduced at trial in support of the verdict."). Specifically, the jury considered evidence that (1) Evans-Waiau's vehicle suffered minimal damage and no injuries were apparent at the scene although the parties stayed there for two hours after the accident; (2) Evans-Waiau may have contributed to the accident; (3) appellants did not speak to a doctor until after visiting an attorney; (4) before surgery,

SUPREME COURT
OF
NEVADA

(O) 1947A

12

Evans-Waiau was in another automobile accident that required immediate transport to a hospital; and (5) appellants' medical care was not reasonable. This evidence supports the jury's verdict such that we cannot conclude that the allegedly improper argument affected appellants' substantial rights, and thus, appellants cannot show plain error. *See id.* at 19 n.32, 174 P.3d at 982 n.32 (explaining that "[i]rreparable and fundamental error . . . is only present when it is plain and clear that no other reasonable explanation for the verdict exists" (internal quotation marks omitted)).[6]

*Appellants' remaining arguments do not warrant reversal*

Appellants argue that the district court abused its discretion when it (1) admitted the Parra-Meza audio/visual recording, (2) gave two comparative-negligence jury instructions regarding appellants' taillights, and (3) allowed Dr. Schifini to testify as an expert witness.

---

[6]Appellants also argue that Tate's counsel engaged in attorney misconduct by using evidence that appellants were treated on medical liens to argue that appellants' medical care was attorney driven despite the lack of evidence to support that claim. However, the core of this argument is that Tate's counsel violated the district court's order granting a motion in limine, which precluded such an argument absent supporting evidence in the record. Because appellants did not object to this argument at trial, and a motion in limine preserves an error that violates the initial order only if the complaining party objects at trial, *BMW*, 127 Nev. at 137, 252 P.3d at 659, this argument is waived, *Lioce*, 124 Nev. at 19, 174 P.3d at 981. Regardless, as explained above, sufficient evidence supports the jury's verdict, and thus, any error in allowing the argument does not warrant reversal. *See Lioce*, 124 Nev. at 19, 174 P.3d at 981-82. For similar reasons, we reject appellants' contention that Tate's counsel engaged in attorney misconduct by arguing that Evans-Waiau's insistence on waiting for police to respond to the accident undermines her credibility. *See id.* (explaining that unobjected-to attorney misconduct is not reversible unless the complaining party shows "that no other reasonable explanation for the verdict exists" (internal quotation marks omitted)).




First, as to the district court's decision to admit the Parra-Meza audio/visual recording, we conclude that the district court did not abuse its discretion, as it properly found that the recording was relevant to Parra-Meza's credibility and motivation in testifying. *See Daisy Tr. v. Wells Fargo Bank, N.A.*, 135 Nev. 230, 232, 445 P.3d 846, 848 (2019) (reviewing a district court's decision admitting evidence for an abuse of discretion). Parra-Meza testified in support of Evans-Waiau's alleged injuries, and the recording and his associated testimony could show Parra-Meza was motivated to inflate Evans-Waiau's injuries, especially in light of the relatively minor damage to the vehicle. *Robinson v. G.G.C., Inc.*, 107 Nev. 135, 143, 808 P.2d 522, 527 (1991) (concluding that evidence of a witness's motivation to testify is admissible for impeachment purposes); *cf. Rish v. Simao*, 132 Nev. 189, 197, 198 n.4, 368 P.3d 1203, 1209, 1210 n.4 (2016) (noting that "even in the absence of supporting expert testimony, there is a common-sense correlation between the nature of the impact and the severity of the injuries," but acknowledging that "[l]ow-impact collisions can cause serious, as well as minor, injuries"). Further, as the evidence was offered to show Parra-Meza's motivation in testifying about Evans-Waiau's injuries, it is not hearsay. NRS 51.035 (defining hearsay as an out-of-court statement "offered in evidence to prove the truth of the matter asserted"). Finally, the use of profanity itself does not make a recording per se unduly prejudicial, *see, e.g., United States v. Bufalino*, 683 F.2d 639, 647 (2d Cir. 1982) (concluding that a tape recording of an extortion threat that contained several obscenities was not highly prejudicial); *Foster v. Schares*, No. 08-0771, 2009 WL 606232, at *5 (Iowa Ct. App. Mar. 11, 2009) (explaining how "the profanity in question has become commonplace throughout all segments of society," and concluding that the district court therefore did not abuse its discretion by admitting evidence that the plaintiff told the

SUPREME COURT
OF
NEVADA

(O) 1947A

defendant he "better have F'ing insurance"), and we perceive no abuse of discretion in the district court's finding that the jury would likely not be surprised at the profanity, given the context and circumstances in which Parra-Meza used it.

Second, the district court did not abuse its discretion when it gave the comparative-negligence jury instructions. *MEI-GSR Holdings, LLC v. Peppermill Casinos, Inc.*, 134 Nev. 235, 237-38, 416 P.3d 249, 253 (2018) (reviewing a decision to give a jury instruction for an abuse of discretion). Both Evans-Waiau and Parra-Meza testified that Parra-Meza installed aftermarket taillight covers that "smoked out" the rear taillights to the vehicle. Parra-Meza agreed with the "interpretation" that regular taillights are more visible than smoked-out taillights and acknowledged that the vehicle had been rear-ended twice after he installed the smoked-out taillight covers. That testimony, coupled with Tate's testimony that she did not see "any turn signal" or brake lights and "would have seen a turn signal" had Evans-Waiau used one, supports the district court's decision to give the challenged instructions regarding required safety equipment and taillight visibility requirements. *See Banks v. Sunrise Hosp.*, 120 Nev. 822, 832, 102 P.3d 52, 59 (2004) ("[A] party is entitled to jury instructions on every theory of her case that is supported by the evidence." (alteration in original) (internal quotation marks omitted)).

Third, we are not persuaded that the district court abused its discretion by allowing Dr. Schifini's testimony. *Leavitt v. Siems*, 130 Nev. 503, 509, 330 P.3d 1, 5 (2014) (reviewing a decision to allow expert testimony for an abuse of discretion). His testimony assumed that appellants were injured in the crash and suffered the symptoms they reported, and based on those assumptions, he concluded that several aspects of the medical care appellants received were not reasonable.



Because his testimony "include[d] the plaintiff's causation theory in his analysis," the district court properly allowed it as rebuttal expert testimony.[7] *FGA, Inc. v. Giglio*, 128 Nev. 271, 284, 278 P.3d 490, 498 (2012) ("[F]or defense expert testimony to constitute a contradiction of the party opponent's expert testimony, the defense expert must include the plaintiff's causation theory in his analysis."); *Williams*, 127 Nev. at 530-31, 262 P.3d at 368 (same).

*CONCLUSION*

Consistent with *Rives*, an appellant need not move for a new trial to raise claims of improper attorney arguments on appeal if they preserved the issue with an objection. As to the merits, on this record, we conclude that the alleged improper ability-to-pay argument and golden-rule argument do not warrant reversal, either because they fall within a permissible range of argument or because appellants did not timely object and are unable to show plain error. As to the other alleged trial errors, we perceive no abuse of discretion in the district court's decision to (1) admit the audio/video recording of Parra-Meza, as the recordings met relevancy criteria; (2) give comparative-negligence jury instructions in light of undisputed testimony regarding alteration of the taillight covers and conflicting testimony about turn signal use; and (3) allow Dr. Schifini to testify, because his testimony met the requirements for expert witness

---

[7]We decline to consider appellants' other argument that an expert can testify to the reasonableness of a party's medical treatment only if that expert also asserts a medical causation theory that contradicts the party opponent's medical causation theory because appellants did not provide any authority supporting that argument. *Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 330 n.38, 130 P.2d 1280, 1288 n.38 (2006) (explaining that this court will not consider claims unsupported by cogent argument and relevant authority).

testimony on causation. Accordingly, we affirm the district court's judgment on the jury verdict.

_____, J.
Cadish

We concur:

_____, C.J.
Parraguirre

_____, J.
Hardesty

_____, J.
Pickering

STIGLICH, J., with whom SILVER and HERNDON, JJ., agree, dissenting:

I respectfully dissent because, in my view, Tate's counsel's comments during closing amounted to an impermissible ability-to-pay argument. These comments infected the sanctity of the trial and potentially the jury's verdict. Therefore, I would reverse the judgment and remand for a new trial.[1]

*Tate's comments during closing argument impermissibly commented on Tate's ability to pay*

During closing arguments, Tate argued that it would take hundreds of years for an "average family" to save the $3 million in damages that appellants sought in this case. Tate maintained that these comments were only meant to remind the jurors of "the value of the dollar." The majority concludes that Tate did not make an ability-to-pay argument here because Tate "did not ask the jury to reject appellants' claims based on Tate's inability to pay a judgment and did not even discuss Tate's financial circumstances."

I disagree. This line of argument was introduced to demonstrate the severity of Tate's potential liability with the clear inference

---

[1]I also believe that these comments violated the prohibition against invoking the "golden rule" because they may have "infect[ed] the jury's objectivity" by asking them to consider if they could save up the $5,000 per year required to pay off the potential judgment. *See Lioce v. Cohen*, 124 Nev. 1, 22, 174 P.3d 970, 984 (2008) (explaining that a golden rule argument "is an argument asking jurors to place themselves in the position of one of the parties"). However, reviewing for plain error because appellants did not preserve this claim, I agree with the majority that reversal is not warranted on this issue because "other reasonable explanation[s] for the verdict exists." *Id.* at 19, 174 P.3d at 982 (quoting *Ringle v. Bruton*, 120 Nev. 82, 96, 86 P.3d 1032, 1041 (2004)).

being that she would not be able to pay. *Cf. Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977) (observing that "the ability of a defendant to pay the necessary damages injects into the damage determination a foreign, diverting, and distracting issue which may effectuate a prejudicial result"). True, Tate did not explicitly ask the jury to consider Tate's ability to pay or Tate's financial circumstances. But Tate's emphasis that it would take an "average family" over 600 years to pay off the damages that appellants sought strongly—and impermissibly—implied that Tate could never pay back such a judgment. Tate did not mention the "value of the dollar" in the abstract. Rather, Tate contended concretely that "[a] lot of people aren't able to [pay $5,000 a year]." This is a quintessential ability-to-pay argument that all but explicitly references Tate specifically.

*This improper argument prejudiced the jury's verdict and warrants a new trial*

In my view, Tate's ability-to-pay argument during closing warrants reversal because I believe that the jury may have found that Tate was negligent had Tate's comments been disallowed. These comments urged the jurors to consider the value of the dollar and implied that such an onerous financial burden would be impossible for the "average family" to pay off. This line of argument focused not on whether Tate was negligent as a matter of law but rather on whether Tate could pay the judgment as a matter of fact. *Cf. Taylor v. State*, 132 Nev. 309, 323, 371 P.3d 1036, 1045 (2016) (observing that "[t]he purpose of closing arguments is to 'enlighten the jury, and to assist . . . in analyzing, evaluating, and applying the evidence, so that the jury may reach a just and reasonable conclusion'" (quoting 23A C.J.S. *Criminal Law* § 1708 (2006))). I believe that excluding these improper comments may have reasonably led to a different verdict below, and I would reverse on this issue. *See Wyeth v. Rowatt*, 126 Nev.

446, 465, 244 P.3d 765, 778 (2010) (concluding that prejudicial error occurs when "the error affects the party's substantial rights so that, but for the alleged error, a different result might reasonably have been reached").

        I believe that the court has erred in resolving this appeal. I respectfully dissent.

                                                                 _____, J.
                                                    Stiglich

We concur:

_____, J.
Silver

_____, J.
Herndon